(251 P.3d 666)
No. 104,361

LINDSAY SCHNEIDER, *Appellee*, v. LIBERTY ASSET MANAGEMENT, *Appellant.*

Petition for review denied 298 Kan. ____ (Oct. 1, 2013).

Opinion filed May 27, 2011.

*Todd E. Shadid*, of Klenda, Mitchell, Austerman & Zuercher, L.L.C., of Wichita, for appellant.

*Donald H. Snook*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before MARQUARDT, P.J., STANDRIDGE and ARNOLD-BURGER, JJ.

MARQUARDT, J.: Liberty Asset Management (Liberty) appeals from the trial court's finding that it violated the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, by engaging in a deceptive act. We reverse.

Liberty's business includes purchasing residential property redemption rights. In December 2006, Liberty purchased the redemption rights to property at 222 South Greenwood, Wichita. After rehabbing the house, Daniel Drake, a managing member of Liberty, hired Darren W. Boldea, a real estate broker with Allegiant GMAC, to market the property. Boldea prepared a multiple listing service (MLS) sheet for the Greenwood property. On the second page of the MLS statement, there was a section entitled "public remarks" where it described the house as follows:

"[U]pdated Bungalow with tons of space. All new carpet, vinyl and paint. New roof and brand new central air. Has large closets in both bedrooms, formal dining room, kitchen also has room for dining, large living room, oversized, detached garage. Home is in great established neighborhood and located right across from a park."

Drake testified that he did not discuss the information to be put in the MLS statement with Boldea. Drake testified that he never saw the MLS statement. Lindsay Schneider's realtor, Lisa Hendrickson, saw the MLS statement and brought it to Schneider's attention. Schneider testified that she was interested in the property because of the price range and the features that were listed as new. Schneider signed an offer to purchase the Greenwood property on April 16, 2007. Schneider hired Tom Beard to inspect the house. The April 24, 2007, inspection report indicated that the roof was "Rear 1 year sides/front 8-12." Schneider testified that she believed the "8-12" on the inspection report meant the age of the roof.

When Schneider's offer to purchase was forwarded to Liberty, it had Beard's inspection report attached to it. As part of the offer, Schneider requested that Liberty fix the gas leak noted in the inspection report, install a garbage disposal and dishwasher, and treat the house for termites. Liberty acceded to these requests. Schneider made no request concerning the roof.

Schneider's "Contract for Purchase and Sale of Real Estate" stated, *inter alia*:

"[N]either the listing nor selling brokers, or their agents, employees, or associates have made, on their own behalf, any representations or warranties, expressed or implied with respect to the Property. Any information furnished to either party through the Multiple Listing Service or in any property condition report should be independently verified by that party before that party relies on such information. Any representations made herein have been made by the listing/selling brokers based on information supplied by sources believed to be reliable, and brokers and their associates have not assumed any responsibility, directly or indirectly, with respect to any representation or warranties which have been made. . . . **Again, it is emphasized that if any party believes representations have been made, they must be set forth specifically in writing in paragraph 31 (Miscellaneous) if they are to be effective or enforceable.**

. . . .

". . . The buyer has carefully examined the Property and the Improvements, and in making the decision to buy the Property, the Buyer is relying wholly and completely upon Buyer's own judgment and the judgment of any contractors or inspectors Buyer may have selected.

. . . .

". . . This Contract constitutes the entire agreement between the parties and supersedes any previously executed contracts and representations, verbal or written."

The roof began leaking several months after Schneider purchased the house. Schneider testified that she did not know where the leak was coming from. On July 30, 2007, Schneider e-mailed Brian Journagan, the Prudential selling agent who was identified on the Greenwood property MLS statement, stating in part:

"I'm going to go home today on my lunch break and look through the paperwork of when I bought the house, because I believe they were claiming it to be a new roof. And also look at the inspectors work of the roof and what exactly he said. Feel free to call me, or I will contact you when I find out more information."

On July 31, 2007, Journagan responded: "I am going to call the inspector to talk to him and I will talk to the broker about what else can be done." In response on the 31st, Schneider e-mailed:

"Just wanted to let u know I went through some paperwork I had, and on the listing of the house under features the Roof had 'Composition' under it, but under the 'Public Remarks' it says 'New roof.' So, isn't this something we can go back on the seller with?

"As far as the inspection report from the inspector, he had stated 'Roof Structure - Spaced decking/Wood Shingles. Some insurance carriers will not insure this type of roof structure (no decking). We recommend having this condition evaluated by your insurance carrier for insurability BEFORE CLOSING.' and also under 'All Roof Surface' it states: 'Method of Inspection: Ladder at eaves; Acceptable Material: Composition shingles[;] Approximate Age: Rear 1 year sides/front 8-12; Acceptable Flashing: Galvanized and Aluminum'

"Although, now that I'm thinking about it, since the inspection said 'Approximate Age: Rear 1 year sides/front 8-12' that basically told us that it wasn't all new, but the seller was still claiming it was. Is there anything we can do since we didn't bring it up again in the closing?"

On March 3, 2008, Schneider filed a petition alleging Liberty had engaged in a deceptive act in violation of K.S.A. 50-626 and K.S.A. 50-627. After a trial, the district court found that Liberty did not intentionally deceive Schneider; however, it found that the MLS statement that the house had a new roof was inaccurate and constituted a deceptive act for which Liberty was liable. The trial court also found that Schneider was an aggrieved party as a result of the deceptive act and ordered Liberty to pay her $2,000 in civil penalties and $2,000 in attorney fees.

Both parties filed motions to reconsider the trial court's decision. The motions were denied. Liberty timely appealed.

### DOES THE REAL ESTATE CONTRACT BAR A KCPA CLAIM?

Liberty argues that by signing the real estate contract, Schneider waived any KCPA claim she might have had. Schneider argues that the statute does not allow a consumer to waive KCPA rights. This court has de novo review over the legal effect of contract terms. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 881, 135 P.3d 1230 (2006).

There has been no Kansas case with facts identical to those presented here. K.S.A. 50-625, the statute covering waiver of KCPA claims, states in relevant part:

"(a) Except as otherwise provided in this act, a consumer may not waive or agree to forego rights or benefits under this act.

"(b) A claim, whether or not disputed, by or against a consumer may be settled for less value than the amount claimed.

"(c) A settlement in which the consumer waives or agrees to forego rights or benefits under this act is invalid if the court finds the settlement to have been unconscionable at the time it was made."

A consumer may not waive a KCPA claim except as provided in K.S.A. 50-625. Schneider's contract for purchase did not include an assertion that her KCPA claim was settled or that she agreed to forego a KCPA claim. Without facts to support a waiver, we find that the statements in Schneider's contract did not constitute a waiver of her KCPA claim.

## WHAT CONSTITUTES A DECEPTIVE ACT UNDER THE KCPA?

Liberty argues that it did not engage in a deceptive act. This issue involves interpretation of K.S.A. 50-626 and K.S.A. 50-627. This court has unlimited review over interpretation of a statute. *Unruh v. Purina Mills*, 289 Kan. 1185, 1193, 221 P.3d 1130 (2009). However, where material facts are in dispute, this court must determine if the trial court's factual findings are supported by substantial competent evidence. *Mercy Regional Health Center v. Brinegar*, 43 Kan. App. 2d 156, 164-65, 223 P.3d 311 (2010). Substantial competent evidence is evidence which a reasonable person would consider sufficient to support a conclusion. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

In her petition, Schneider claimed that Liberty engaged in a deceptive act and unconscionable practice with knowledge and intent by violating K.S.A. 50-626 and K.S.A. 50-627. The trial court found that Liberty engaged in a deceptive act. On review, we must decide whether Liberty committed a deceptive act when its MLS statement claimed the Greenwood house had a new roof.

K.S.A. 50-626(a) provides that "No supplier shall engage in any deceptive act or practice in connection with a consumer transac-

tion." A consumer is an individual who seeks or acquires property or services for personal purposes. K.S.A. 50-624(b). A consumer transaction is a sale of property for value to a consumer. K.S.A. 50-624(c). A supplier is a seller, who in the ordinary course of business, engages in consumer transactions, whether or not dealing directly with a consumer. K.S.A. 50-624(j). Additionally, under the KCPA there is no requirement that a consumer has been misled by the deceptive act in order to claim relief under the KCPA. K.S.A. 50-626(b); *Cornerstone Homes v. Skinner*, 44 Kan. App. 2d 88, 99, 235 P.3d 494 (2010).

The trial court found that Schneider was a consumer, Liberty was a supplier, and the sale of the house was a consumer transaction. K.S.A. 50-626(b) contains a nonexclusive list of what are deceptive acts. Under K.S.A. 50-626(b)(1)(C), a violation is stating that the "property is original or new, if such property has been deteriorated . . . or otherwise used to an extent that is materially different from the representation." The trial court found that the MLS statement listing the house as having a new roof was a deceptive act. However, without evidence that the MLS listing was a willful falsehood, the trial court found that Liberty had not intentionally misled Schneider.

Liberty argues that in order for there to be a deceptive act, there has to first be a deception, relying on *Crandall v. Grbic*, 36 Kan. App. 2d 179, 138 P.3d 365 (2006). Crandall entered into a written agreement to purchase a house. The agreement stated that Crandall agreed to have inspections and was not relying on the seller's representations. The seller's disclosure statement mentioned only that the south basement window had leaked during heavy rain; it mentioned nothing about the roof. Crandall's inspector found that the roof was "nearing the end of its life expectancy" and the patio roof had a low slope. 36 Kan. App. 2d at 182. The inspector recommended that Crandall have an evaluation done on the roof. The seller hired a roofing inspector who reported that he was not worried about the patio roof because it covered a porch instead of an indoor area. During a final walk-through of the house, Crandall noticed leakage and an apparent mildew stain on the patio. Cran-

dall asked the seller if the patio roof had leaked before, and the seller told them it had not. 36 Kan. App. 2d at 180-84.

This court ultimately concluded in *Crandall* that there had been no deceptive acts in violation of the KCPA. The court reasoned: "As defendant argues, the fact the potential for problems with the patio roof was mentioned in numerous places on the house inspector's report effectively precludes any claim under this section. Defendant did not deceive plaintiffs in any of the ways listed in the statute." 36 Kan. App. 2d at 196. In *Crandall*, there was no evidence that the seller misrepresented any facts about the condition of the patio roof. 36 Kan. App. 2d at 196. Therefore, *Crandall* is very different factually from the instant case and is not applicable here.

A KCPA claim was also made in *Stechschulte v. Jennings*, 43 Kan. App. 2d 47, 71-72, 222 P.3d 507 (2010). Stechschulte purchased real property from Jennings and sued Jennings for fraud, negligent misrepresentation, and breach of contract. Stechschulte sued the realtor and the real estate agency for a KCPA violation. This court found that without proof that the realtor acted willfully or wantonly in failing to state a material fact, or in concealing, suppressing, or omitting a material fact, there is no KCPA violation. This court reasoned that the realtor and real estate agency were not liable for KCPA violations because the representations were not in writing and were not signed by the realtor. 43 Kan. App. 2d at 71. The decision, finding no KCPA violation, emphasized the fact that the representations were not in writing. In the instant case, we have a statement in writing.

Schneider argues that the language of the statute does not require actual deception. The statute provides that the KCPA applies "whether or not any consumer has in fact been misled." K.S.A. 50-626(b). Schneider cites to *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 732 P.2d 392, *rev. denied* 241 Kan. 838 (1987), to support this position. We agree that actual deception is not required for a violation of the KCPA. Because Liberty listed the Greenwood house as having a new roof, there is substantial evidence to support the trial court's finding that the MLS statement was a deceptive act in violation of K.S.A. 50-626(b)(1)(C).

## Is Schneider an Aggrieved Party under the KCPA?

Because there is a violation of the KCPA, we must decide whether Schneider is an aggrieved consumer under the KCPA. Generally, a consumer may not bring a private action under the KCPA unless the consumer can prove that the seller has aggrieved the consumer. K.S.A. 50-634. To be aggrieved under the statute, the consumer must prove that the seller's act has adversely affected the consumer's legal rights. *Finstad v. Washburn University*, 252 Kan. 465, 468-69, 474, 845 P.2d 685 (1993). Additionally, the consumer must show that there was a causal connection between the deceptive act and the claimed injury. 252 Kan. at 470.

Schneider testified that she did not request a home inspection because of the MLS representation that the roof was new. Also, when asked whether she had the house appraised because of the misrepresentation, Schneider testified, "At the time I don't recall what exactly I was—I don't even know when this was, honestly. It's been a long discussion."

Liberty relies on *Finstad*, 252 Kan. at 472, 474, to argue that Schneider was not an aggrieved party. In *Finstad*, students at Washburn University's court reporting program complained that the school had committed violations of the KCPA by stating in a 1987-89 class catalogue that the court reporting program was accredited by the National Shorthand Reporters Association. The school was in fact not accredited. The university began whiting out the catalogue and made an announcement in classes to clarify that it was seeking accreditation. Our Supreme Court found that the students were not aggrieved under the KCPA as many were unaware that the statements had been made, or had enrolled before the catalogue had been published. Additionally, the court found that the students were not harmed by the misrepresentations. 252 Kan. at 472.

Unlike *Finstad*, Schneider testified that the features that interested her in the Greenwood property were the price range, the number of bedrooms and bathrooms, new carpet, new paint, new vinyl, new roof, and new air conditioning. However, notwithstanding the fact that Schneider had seen the MLS statement, the mis-

representation here was not the cause of harm to Schneider. Any harm that Schneider suffered was either because of her failure to read her inspector's report or her decision to proceed with the purchase even though she had information that the roof was not new.

Schneider argues that under the definition of an aggrieved party she is not required to show pecuniary damages. Schneider is correct, and this argument is supported by case law. See *Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 823, 1 P.3d 899 (2000). However, Schneider must still show that her damage is related to the misrepresentation. Here, Schneider's inspection disclosed the age of the roof and was an intervening event between her seeing the MLS listing and her purchase of the house. Schneider can show no harm to her as a result of the deceptive MLS listing and, therefore, she is not an aggrieved party. The trial court's determination that she was an aggrieved party is not supported by substantial competent evidence. The judgment against Liberty is reversed.

Reversed.