No. 120,228

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

YUDI HERNANDEZ,
*Appellant*,

v.

BRAD PISTOTNIK and BRIAN PISTOTNIK,
*Appellees*.

MEMORANDUM OPINION

1.

To prevail on a Kansas Consumer Protection Act (KCPA) claim, a plaintiff must prove that (1) plaintiffs were consumers under the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. 50-626 or K.S.A. 50-627, and (4) plaintiffs were aggrieved by such act.

2.

To be aggrieved under the KCPA, the consumer must show that the seller's act adversely affects the consumer's legal rights and must show a causal connection between the deceptive act and the claimed injury.

3.

The causal connection required under the KCPA between an attorney's deceptive advertising and the plaintiff's claimed injury is not shown when a plaintiff plays no part in the decision to hire that attorney, and her father who chose that attorney was unaware of the attorney's advertising.

1

4.

Under certain circumstances, a plaintiff may recover for fraudulent misrepresentation based on indirect reliance.

5.

Control of discovery is entrusted to the sound discretion of the district court, and orders concerning discovery will not be disturbed on appeal in the absence of an abuse of discretion.

6.

Under Kansas Supreme Court Rule 222 (2020 Kan. S. Ct. R. 273), an attorney's response to the office of the Kansas Disciplinary Administrator is confidential and not subject to discovery.

7.

Under K.S.A. 60-609, a district court has the discretion to grant or deny a party's motion for change of venue. We review the district court's decision to change venue for an abuse of discretion.

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed July 31, 2020. Affirmed.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

*N. Russell Hazlewood*, *Donald N. Peterson*, and *Nathan R. Elliott*, of Graybill & Hazlewood LLC, of Wichita, for appellees.

Before GARDNER, P.J., WARNER, J., and ROBERT J. WONNELL, District Judge, assigned.

GARDNER, J.:  Yudi Hernandez sued Brad Pistotnik and Brian Pistotnik for fraud and violation of the KCPA based on defendants' allegedly misleading television advertisements for legal services. The district court granted summary judgment to defendants on both claims, finding Yudi failed to prove she relied on defendants' advertisements in securing their legal services. Yudi appeals, arguing the district court improperly granted summary judgment, shielded discovery, and transferred venue. Finding no error, we affirm.

*Factual and Procedural Background*

In June 2013, Yudi was injured as a passenger in a two-car accident. She was 17 years old  and suffered multiple injuries. The accident rendered her unconscious and doctors placed her in a drug-induced coma for one month. She was also given a tracheostomy tube so she was unable to speak for two months after she regained consciousness.

After the accident, Yudi's father (Ernesto Hernandez) told Yudi's sister (Mirna Hernandez) that Yudi had been involved in a serious car accident. Because Yudi's parents spoke little English and Ernesto could not read in English or Spanish, Mirna helped the family find an attorney. Mirna first called a family friend who recommended that they hire Brad. The family friend knew about Brad from his television commercials. So Mirna looked for Brad's television advertisements and saw he was claiming he could collect millions of dollars for car accidents. Those advertisements touted large settlement amounts and no attorney fees if the client got no money for the injury. Mirna went to Brad's office—the law office for the Affiliated Attorneys of Pistotnik Law Offices (AAPLO) in Wichita.

3

Mirna had an initial consultation with Brian Pistotnik. A few days later, Ernesto—with Mirna's assistance—retained AAPLO to pursue Yudi's bodily injury claim against the drivers of the two vehicles involved in the accident. This agreement defined AAPLO as the attorney and Yudi as the client through her natural father. But according to Brad, Brian was the only person who negotiated that agreement for AAPLO and was the only attorney who worked on Yudi's case.

In August 2013, Electric Insurance Company offered to pay its liability policy limits of $100,000 to settle Yudi's claim. And in October 2013, Farmers Insurance Group tendered its liability policy limits of $50,000. So, by November 2013, Brian had obtained policy limit offers totaling $150,000 from the liability insurers of the drivers alleged to be at fault for Yudi's injuries. Yet before accepting these offers, Ernesto fired AAPLO and hired Steve Brave, who had previously worked at AAPLO, to perform the remaining work necessary to resolve Yudi's claim.

Shortly after his termination, Brian filed a notice of attorney's lien for AAPLO and served it on the liability insurers. The lien sought $1,504.25 for costs and $49,498.58 in attorney fees against any funds, proceeds, or monies payable to Yudi as a result of injuries and damages sustained in her accident.

In May 2014, Ernesto and Yudi entered into written settlement agreements. These agreements released the drivers of the two vehicles in the accident and the automobile insurers from all liability in exchange for $150,000—the same amount insurers had earlier offered to Brian. That money was to be paid directly to Ernesto and was not payable to Yudi.

After the settlement agreements were signed, Brave contacted the health care providers to whom Ernesto owed unpaid medical bills for Yudi. The providers agreed to take reduced amounts of money to settle their accounts in full. After Brave's negotiations,

4

Ernesto paid $51,570.80 to health care providers for Yudi's injuries, and $32,809.73 to Brave for attorney fees. Brave then paid Ernesto the remaining $65,619.47 by check payable to Ernesto. Ernesto immediately endorsed this check to Yudi, who deposited it into her personal bank account.

Brian then sued Ernesto to recover the amount sought in the AAPLO lien. And Yudi sued Brian and Brad, arguing they had defrauded her and violated the Kansas Consumer Protection Act. She filed her suit in Cowley County, but the district court later granted Brad's motion to transfer venue to Sedgwick County.

Throughout litigation, several discovery disputes arose when Yudi requested production of AAPLO advertisements and settlements with other clients, and a response Brad had made to the office of the Kansas Disciplinary Administrator (KDA) when someone filed a complaint against him. Defendants objected, responding that the settlement and disciplinary documents were privileged and not subject to discovery. At first, the district court found that the settlements were discoverable. But after an in camera inspection, the district court determined the settlements were confidential so it issued a protective order limiting the production of information in them. The district court also found that Brad's response to the KDA was not discoverable.

In due course, Brad moved for summary judgment, arguing Yudi had failed to state a claim on which relief could be granted and had failed to produce sufficient evidence of fraud. Brad also argued that Yudi could not recover under the KCPA because she was not an aggrieved party.

The district court granted Brad's motion. It found that because Yudi had not seen Brad's advertisements before hiring AAPLO, Yudi's misrepresentation claim necessarily relied on an indirect reliance theory. Even assuming, however, the applicability of that theory, the district court found no evidence suggesting that Ernesto—through Mirna or

5

any other party—had received and indirectly relied on the alleged misrepresentations in the advertisements when he hired AAPLO on Yudi's behalf. Thus, Yudi failed to present sufficient evidence of fraud. Similarly, the district court held that Yudi showed no legal authority that she could bring a KCPA claim based on indirect reliance on a misrepresentation. Thus, the district court dismissed Yudi's claims and granted summary judgment for Brad. Although Yudi moved to reconsider, the district court denied her request.

Yudi timely appeals.

*Did the District Court Err in Granting Summary Judgment on Yudi's KCPA Claims?*

We first address Yudi's claim that the district court erred in granting summary judgment to defendants on her KCPA claim. She contends the district court misapplied the KCPA by requiring her to establish reliance, failed to resolve all inferences in her favor, and ignored disputed issues of material fact. Brad argues that because Yudi failed to establish that she was an aggrieved consumer under the KCPA, the district court was correct.

In an appeal from the district court's ruling on a summary judgment motion, we consider the motion de novo and apply the same standards which the district court applied. We owe no deference to the district court's decision or rationale. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014).

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Cady*, 298 Kan. at 734. Any court considering the motion must resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the

6

party against whom summary judgment is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. To preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. The court must deny a motion for summary judgment if reasonable minds could differ over the conclusions drawn from the evidence. See *Patterson v. Cowley County*, 307 Kan. 616, 621, 413 P.3d 432 (2018); *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

*Analysis*

Yudi argues that she established that she is an aggrieved consumer based on Brad's allegedly false and misleading advertisements, which touted large recoveries and promised zero fees if AAPLO did not recover money for the client. She mainly asserts that the KCPA does not require her to show direct or indirect reliance on Brad's misrepresentations to recover under the KCPA.

The KCPA exists in part to "protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623(b). We construe that Act liberally to ensure that purpose is fulfilled. See K.S.A. 50-623; *Unruh v. Purina Mills*, 289 Kan. 1185, 1207, 221 P.3d 1130 (2009) (Rosen, J., concurring).

To prevail on a KCPA claim, a plaintiff must prove: "(1) plaintiffs were consumers under the KCPA, (2) defendants were suppliers under the KCPA, (3) defendants engaged in a deceptive or unconscionable act or practice in violation of K.S.A. § 50-626 . . . or K.S.A. § 50-627, and (4) plaintiffs were 'aggrieved' by such act." *In re Motor Fuel Temperature Sales Practices*, 279 F.R.D. 598, 604-05 (D. Kan. 2012). The parties concede that Yudi was a consumer, defendants were suppliers, and they engaged in a "consumer transaction" under the KCPA. The district court found solely that

7

Yudi failed to establish she was "aggrieved," as the Act requires. See K.S.A. 50-634(a), (b).

The Act does not define the term "aggrieved." But our cases have done so. We begin with our Supreme Court's decision in *Finstad v. Washburn University*, 252 Kan. 465, 845 P.2d 685 (1993). There, a group of students sued Washburn University for alleged misrepresentations about program accreditation. Our Supreme Court held that it would not interpret "an aggrieved consumer to be one who is neither aware of nor damaged by a violation of the Act." 252 Kan. at 473. It found "the students did not rely on the false statement, and many, if not all, of the students were unaware of the statement." 252 Kan. at 472. Thus the students failed to show a causal connection between their damage and the alleged misrepresentation. 252 Kan. 473-74. Summary judgment for the University was proper.

In *Welch v. Centex Home Equity Co., LLC*, No. 95,981, 2008 WL 713690, at *6 (Kan. App. 2008) (unpublished opinion), a panel of this court opined that "*Finstad* does not hold that an aggrieved consumer must be aware of, have relied upon, *and* be damaged by the deceptive act. Rather, *Finstad* holds that there must be a causal connection between the defendant's conduct and the plaintiff's damages."

Similarly, a panel of this court has held that "[t]o be aggrieved under the statute, the consumer must prove that the seller's act has adversely affected the consumer's legal rights. Additionally, the consumer must show that there was a causal connection between the deceptive act and the claimed injury. [Citations omitted.]" *Schneider v. Liberty Asset Management*, 45 Kan. App. 2d 978, 985, 251 P.3d 666 (2011). "A consumer becomes aggrieved when the consumer suffers legal harm, even if he or she fails to discover or recognize the harm." *Florez v. Ginsberg*, 57 Kan. App. 2d 207, Syl. ¶ 6, 449 P.3d 770 (2019). A consumer need not establish measurable monetary damages to qualify as aggrieved. *Via Christi Regional Med. Center, Inc. v. Reed*, 298 Kan. 503, 519, 314 P.3d

8

852 (2013). But consumers must still show that their damage relates to the alleged misrepresentation. See *Schneider*, 45 Kan. App. 2d at 986.

Yudi must therefore show that she was legally harmed and that her harm was causally connected to Brad's advertising to sustain a triable KCPA claim. See *Welch*, 2008 WL 713690, at *6. Although Yudi's claims of harm are unclear, she seemingly argues that her injuries are twofold: her hiring AAPLO based on Brad's misrepresentations, and Brian's filing of an attorney's lien.

We first address the lien. Yudi does not explain how the filing of the lien legally harmed her. An issue not briefed is considered waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Filing an attorney's lien is permitted by law. Yudi admits that Brad waived his interest in the lien, and that Brian never asked for a hearing to determine the lien's validity or to enforce the lien against her. Instead, Brian later filed a separate lawsuit to recover the amount sought in that lien. Yet, as Yudi admits, she is not a defendant in that case. Yudi does not allege that the lien itself contained any misrepresentations; instead, the lien notice did not include an itemization of litigation expenses or mention fax or copy charges. And nothing shows that Yudi has ever paid AAPLO or either defendant any part of the amount sought in the lien. Yudi received all the personal injury settlement funds she was due, despite the lien having been filed. Therefore, Yudi fails to show a material issue of fact that the mere filing of the lien harmed her.

Harm must thus be found, if at all, in Yudi's hiring AAPLO. We assume, without deciding, that sufficient harm may be established under the KCPA when a client relies on misrepresentations in an attorney's advertisements in selecting a lawyer and is thus "gulled out of a fair opportunity to select a different lawyer." *Consolver v. Pistotnik*, No. 115,197, 2017 WL 2715122, at *3-4 (Kan. App. 2017) (unpublished opinion) (finding

that the decision to choose representation in such a manner "may be enough" to establish the injury needed to succeed on a KCPA claim). But that is not what happened here.

Yudi cannot establish that she relied on the representations made in Brad's advertisements in deciding to retain AAPLO—she was incapacitated when her father made that decision. She played no part in that decision. And even if we assume the viability of an indirect reliance theory under the KCPA, Yudi fails to show that Brad's advertisements played any part in Ernesto's decision to hire AAPLO. Ernesto selected AAPLO on Yudi's behalf because Mirna advised him to. Whether Mirna chose AAPLO because she saw Brad's television advertisements or instead because her friend recommended Brad matters not. No evidence suggests that Mirna conveyed to Ernesto any information about Brad's advertisements. For an indirect reliance theory to work, that, at least, is necessary. Without either direct or indirect reliance, Yudi fails to show any causal connection between Brad's allegedly deceptive advertising and her claimed harm of not having a fair opportunity to choose a different lawyer.

In apparent recognition of her inability to show reliance, Yudi argues none is required under the KCPA. But Yudi must show some adverse effect on her legal rights, and some causal connection between the deceptive act and her claimed injury. As stated above, she has failed to do so.

*The Remaining Miscellaneous Allegations Are Immaterial*

Yudi briefs several miscellaneous arguments about her KCPA claim. She argues that whether Brad was involved in asserting the lien is a question of fact for the jury. But since Yudi has shown no harm flowing from the mere assertion of the lien, it does not matter whether Brad was involved. She also asserts that she was aggrieved by an alleged conflict of interest between Ernesto and Brian. But Yudi failed to provide the district court with evidence of a conflict of interest and now fails to argue how that alleged

10

conflict caused her injury. Finally, Yudi argues that Brian kept a personal injury protection (PIP) check for $4,500 as a "retaining lien" without her knowledge or consent. But Yudi fails to cite the record to support her allegation that AAPLO inappropriately kept a PIP check. And our review of the record reveals no such evidence, other than Yudi's testimony stating AAPLO did not notify her of the existence of a PIP check and did not disburse the funds to her. For these reasons, we find Yudi's miscellaneous allegations immaterial to our decision upholding summary judgment on her KCPA claim.

Similarly, we find it unnecessary to address Brad's argument that Yudi's KCPA claim is precluded by the doctrine of prevention because AAPLO would have recovered money for her, but for Ernesto's decision to terminate the firm.

*Did the District Court Err in Granting Summary Judgment on Yudi's Fraud Claim?*

Next Yudi argues that the district court erred in granting summary judgment on her fraud claim. She argues, as she did regarding her KCPA claim, that the district court misapplied the applicable law, ignored genuine issues of material fact, and failed to resolve inferences in her favor. Brad argues that because Yudi failed to plead fraud with particularity and failed to show the required reliance, the district court correctly granted summary judgment in his favor.

*Preservation Issue Raised by Yudi*

We must first address a procedural issue—Yudi's assertion that Brad's argument is not preserved for appellate review. Yudi argues that Brad had to file a cross-appeal for his claim that Yudi failed to plead fraud with the requisite particularity. We disagree. Although K.S.A. 2019 Supp. 60-2103(h) requires an appellee to file a notice of cross-appeal from adverse rulings to obtain appellate review of those issues, *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016), the district court did not rule adversely to

11

Brad. And Brad does not ask this court to remedy something the district court explicitly rejected.

That said, we choose to focus our discussion on the evidence, as did the district court, instead of on the pleadings.

*Basic Legal Principles*

An actionable fraud claim is one that involves an untrue statement of material fact, known to be untrue, made with the intent to deceive or with reckless disregard for the truth and on which another party justifiably relies to his or her detriment. See *Alires v. McGehee*, 277 Kan. 398, 403, 85 P.3d 1191 (2004); PIK Civ. 4th 127.40. Fraud must be proven by clear and convincing evidence. See *Waxse v. Reserve Life Ins. Co.,* 248 Kan. 582, Syl. ¶ 3, 809 P.2d 533 (1991). But "a party resisting a motion for summary judgment in an action based upon fraud need not present 'clear and convincing evidence' of fraud in opposing the motion." *Dugan v. First Nat. Bank in Wichita*, 227 Kan. 201, 207, 606 P.2d 1009 (1980).

Generally, the Kansas Rules of Civil Procedure permit notice pleading. This means a pleading is sufficient if it contains "[a] short and plain statement of the claim showing that the pleader is entitled to relief" and a demand for judgment. K.S.A. 2019 Supp. 60-208(a). But an exception applies in pleading fraud. Under K.S.A. 2019 Supp. 60-209(b), when pleading fraud, the circumstances constituting fraud must be stated with particularity: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." K.S.A. 2019 Supp. 60-209(b). We strictly enforce the statutory requirement to plead fraud with particularity. See *Palmer v. Brown*, 242 Kan. 893, 901, 752 P.2d 685 (1988).

*Yudi's Petition*

In her amended petition, Yudi alleged these actions were fraudulent:

- "The Defendants' representation that photocopies were a 'litigation expense' and it cost $0.22 to make one was a false representation of a statement of material and existing fact."
- "The Defendants' representation that sending a fax was a 'litigation expense' and cost $1.00 per fax to send one was a false representation of a statement of material and existing fact."
- "The Defendants' representation that the Plaintiff owed them any money at all for legal fees was a false representation of a statement of material and existing fact."
- "The Defendants' failure to attach any documents supporting the figures set forth in the lien served on the Plaintiff was a willful omission of material fact."
- "The false statements that have been made by the Defendants in a wide variety of advertisements for at least ten years—including but not limited to claiming they had achieved 'verdicts and settlements' that they did not obtain and telling potential clients that if they did not recover money for them, they did not owe a fee—were false statements of material and existing fact."

Yudi also referenced, among other things, an alleged conflict of interest, the lien asserted against any personal injury proceeds, and the lack of information about how the fees were calculated.

Yudi generally claimed that defendants knew these representations were untrue when made or made them recklessly. She claimed that the representations were made to induce her to act, and that she reasonably relied and acted on them. As for the advertisements, Yudi claimed: "Both Defendants knew that the statements that appeared in their advertisements were not accurate and both knew that there was no way those that saw them could have discovered the statements were not true through due diligence." Yudi also claimed that she

13

"sustained damages as a result of the Defendant's failure to communicate these material facts to her in a timely manner and, had they done so, she would have never (a) believed that the Defendants had the legal skills to get large verdicts such as the ones they advertised and would not have used them for legal services at all after that[,] had she known they did not; (b) had she settled her personal injury claim, any proceeds due to her would have been encumbered and she would not have been able to use them for any purpose until such time as the lien was resolved and, had the Defendant's proved successful, she would have had to pay over $50,000 for phony legal fees and 'costs'."

*Yudi Fails to Establish Direct or Indirect Reliance*

Brad argues that Yudi failed to produce evidence that she or Ernesto saw any AAPLO advertisement that included a fraudulent representation before Ernesto retained the firm. Thus, Yudi cannot establish that she relied on the fraudulent statement or that she was injured as a result of that reliance.

As explained below, we agree with the district court that Yudi failed to establish reliance. In her amended petition, Yudi claimed that *she* relied on the alleged misrepresentations. But no evidence creates a genuine issue of material fact on that issue.

Yudi did not plead indirect reliance and does not raise indirect reliance in her appellate brief. Yudi explained that her father hired AAPLO, yet she did not allege that he relied on any misrepresentation in making that decision. Likewise, Yudi does not argue that she indirectly relied on the misrepresentations she claims existed in Brad's advertisement on appeal. An issue not briefed is considered waived or abandoned. *Arnett*, 307 Kan. at 650. Thus, summary judgment was proper even assuming the legal validity, generally, of the indirect reliance theory.

14

But this is not a mere pleading problem. Yudi fails to show that Ernesto's reliance could have been imputed to her, even assuming that an indirect reliance theory applies. Yudi fails to show facts suggesting that Ernesto relied on Brad's advertisement. Ernesto—and not Mirna—was Yudi's agent. Yudi fails to provide pertinent legal authority prescribing a method under which this court could consider Mirna's reliance on Brad's advertisements as sufficient for proof of fraud. Yudi argues that fraud may exist when a misrepresentation is made to a third party if it can be shown that the plaintiff was injured as a result of the misrepresentation. But Yudi fails to cite relevant authority. Although other jurisdictions have adopted that approach, see, e.g., *Williams v. Dow Chem. Co.*, No. 01 CIV. 4307 (PKC), 2004 WL 1348932, at *21 (S.D.N.Y. 2004) (unpublished opinion), Kansas courts have not. Reliance remains required for fraud.

Yudi then asserts that under Kansas law, third-party reliance is enough, as it was in *Griffith v. Byers Const. Co. of Kansas*, 212 Kan. 65, 510 P.2d 198 (1973). But that case is distinguishable. In *Griffith*, a group of homeowners sued a developer based on the developer's failure to reveal the high salinity of the land. The developer claimed he could not be sued because he was not in privity with the homeowners and had never met them. The *Griffith* court rejected that claim, finding "[o]ne who makes a fraudulent misrepresentation or concealment is subject to liability for pecuniary loss to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation or concealment." 212 Kan. at 73. As a result, our Supreme Court held that the developer could be sued for not revealing his knowledge about the soil. That decision, however, dealt with fraud by silence, which is not alleged here. 212 Kan. at 73. Our Supreme Court had no need to discuss the requirement that in cases of third party or indirect reliance on a misrepresentation, that misrepresentation must be conveyed to the plaintiff by someone who received the information from the defendant.

We agree that under certain circumstances, a plaintiff may recover for fraudulent misrepresentation under Kansas law where reliance occurred indirectly. The Kansas Supreme Court so held in *Citizens State Bank v. Gilmore*, 226 Kan. 662, 603 P.2d 605 (1979). There, assuming plaintiff could prove its allegations,

"the defendant Gilmore . . . deliberately set out to sell diseased or exposed cattle to Gaede knowing Gaede was going to obtain financing for the purchase of the cattle from the plaintiff Bank. Plaintiff Bank falls squarely within the rule of the Restatement in that it was a person or within that class of persons that Gilmore had reason to expect to act in reliance on the misrepresentation that the cattle were healthy. The fact that the misrepresentation consisted of a concealment of material facts rather than a material misstatement of facts does not alter the situation. Defendants certainly obtained an advantage ($9,000) by concealing the facts." 226 Kan. at 671.

The court held the plaintiff was a real party in interest, had standing to sue, and had stated a cause of action for fraudulent misrepresentation. 226 Kan. at 671-72; see *DeBoer v. American Appraisal Associates, Inc.*, 502 F. Supp. 2d 1160, 1168 (D. Kan. 2007) (noting that a plaintiff could recover for fraudulent misrepresentation under Kansas law when reliance occurred indirectly).

The requirements for proof of fraudulent misrepresentation in cases of third party or indirect reliance are clearly stated in Restatement (Second) of Torts § 533 (1977) (representation made to a third person):

"Some courts have recognized fraud claims in cases of third party or indirect reliance, but only if plaintiffs establish that (1) they received the information from someone who received it from defendant; (2) defendant intended the information to be conveyed to them and (3) they justifiably relied on the information. Restatement (Second) of Torts § 533 (1977); *Citizens State Bank,* 226 Kan. at 669-70, 603 P.2d at 611; *Turtur v. Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 310 (2d Cir. 1994). Because plaintiffs have not alleged that they knew of Cessna's representations to the FAA or to

16

pilots, they cannot establish that they received the information or that they detrimentally relied on it." *In re Cessna 208 Series Aircraft Products Liability Litigation*, No. 05-MD-1721-KHV, 2009 WL 274509, at *6 (D. Kan. 2009) (unpublished opinion).

We apply those requirements here.

Yudi fails to meet the first requirement, as no facts show that Ernesto "received the information from someone who received if from defendant." Ernesto testified that he did not know much of anything about the suit against Brian and Brad. He did not know of any misrepresentations. And no evidence suggests that Ernesto relied on any representations in Brad's advertisements. He hired AAPLO because Mirna told him to. Yet the record does not show that Mirna told Ernesto about the advertisements or otherwise conveyed their substance to him before he hired the firm. Because the record does not show that Yudi could have relied, or Ernesto could have indirectly relied, on Brad's advertisements, Yudi fails to raise a genuine issue of material fact on that necessary element of her fraud claim.

*Did the District Court Abuse Its Discretion in Denying Some of Yudi's Discovery Requests?*

Yudi next argues that the district court erred in denying her discovery requests for copies of AAPLO settlement agreements with other clients, and for Brad's response to the KDA. We reach these discovery issues because Yudi argues that the information in these documents was crucial to and "likely dispositive" of her claim.

Yudi asserts that we should apply a de novo standard of review in deciding this issue. We disagree. Generally, "'[c]ontrol of discovery is entrusted to the sound discretion of the district court, and orders concerning discovery will not be disturbed on appeal in the absence of clear abuse of discretion.'" *Kansas Medical Mut. Ins. Co. v. Svaty*, 291

17

Kan. 597, 618, 244 P.3d 642 (2010). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). We apply that standard here.

We first review the district court's finding that Brad's response to a complaint someone made about him to the KDA was not discoverable. Although the district court apparently did not do an in camera inspection before making that determination, the district court is deemed to know the strictures of Kansas Supreme Court Rule 222:

> "(a) Confidentiality. All complaints, investigations, reports, correspondence, proceedings, and records of the disciplinary administrator and the Kansas Board for Discipline of Attorneys are private and confidential and must not be divulged in whole or in part except as provided in subsections (d), (e), and (f) below or by order of the Supreme Court." (2020 Kan. S. Ct. R. 273).

Suffice it to say that subsections (d), (e), and (f) do not apply here, and no Kansas Supreme Court order to disclose the response was made. See Rule 222(d) (2020 Kan. S. Ct. R. 273) (providing that "[u]pon request, the disciplinary administrator will disclose to the respondent all evidence in the disciplinary administrator's possession. *No other discovery will be permitted.*" [Emphasis added.]). Brad's response to the KDA was confidential and not subject to discovery.

Yudi's request for settlement documents falls within more general rules governing discovery in civil cases. Our district courts have supervisory powers over discovery under K.S.A. 2019 Supp. 60-226. Under that statute, the district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." K.S.A. 2019 Supp. 60-226(c)(1)(D). The district court did so here.

18

A district court must follow certain procedures in considering a party's claim that evidence is confidential "when a claim of privilege, confidentiality or irrelevance is raised the court has a duty to conduct an *in camera* inspection to separate and permit discovery of only the relevant documents, thereby protecting against unnecessary and damaging disclosure of irrelevant confidential material." *Berst v. Chipman*, 232 Kan. 180, 187, 653 P.2d 107 (1982). The district court should consider various factors.

> "In striking a balance between discovery and nondisclosure, courts should consider "'the nature of the proceeding, whether the deponent is a party, whether the information sought is available from other sources, and whether the information sought goes to the heart of the claim."' Additional factors to [consider] are the degree of harm that would be caused by disclosure, the type of controversy before the court, and the public interest in forbidding discovery. [Citations omitted.]" *Rockhill Pain Specialists v. Hancock*, 55 Kan. App. 2d 161, 182, 412 P.3d 1008 (2017).

Yudi argues that because the information in the settlement agreements was crucial to and "likely dispositive" of her claim, their importance far outweighs any potential harm in allowing discovery.

The district court initially determined that the settlement agreements at issue were relevant, unprivileged, and discoverable. But after Brad claimed the agreements were confidential, the district court conducted an in camera review of the documents. It agreed that the settlements showed they were confidential, and so it limited discovery to the facts that would have determined whether a settlement occurred and in what amount. But the district court's decision lacks any discussion of what factors it considered or how it weighed them. By failing to show it considered the necessary factors, the district court erred. We cannot reweigh evidence on appeal. See *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514-15, 154 P.3d 494 (2007).

19

*Harmless Error*

Nonetheless, we find that error harmless. Yudi did not ask the district court to make specific findings or object to its general ruling. "When there is no objection to a trial court's findings, this court presumes that the trial court found all facts necessary to support its judgment." *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017). And Yudi had other means of obtaining information that Brad had made misrepresentations in his advertisements. Yudi specified only the $9 million representation Brad made, but Yudi already had Brian's testimony that Brad had not recovered a $9 million judgment, as someone other than Brad had obtained that settlement. And Yudi had Brad's admission to having made an inadvertent misrepresentation about an alleged $2.4 million judgment. We find no reversible error in the district court's handling of these discovery issues.

*Did the District Court Abuse Its discretion by Transferring Venue?*

Yudi next argues that the district court abused its discretion by transferring venue from Cowley County to Sedgwick County. She claims the Cowley County district judge's decision was swayed by its reliance on a false statement by Brad's attorney.

K.S.A. 60-609(a) provides that "[u]pon the motion of a party, a district court may transfer any civil action to any county where it might have been brought upon a finding that a transfer would better serve the convenience of the parties and witnesses and the interests of justice." Under K.S.A. 60-609, a district court has the discretion to grant or deny a party's motion for change of venue. *In re Marriage of Yount & Hulse*, 34 Kan. App. 2d 660, 663, 122 P.3d 1175 (2005). So, we review the district court's decision to change venue for an abuse of discretion.

In her petition and amended petition, Yudi alleged that Brad had sent his false advertisements throughout Kansas including where she resided—in Cowley County. Brad

20

moved to transfer venue to Sedgwick County, arguing "all of the activities took place in Wichita."

At the hearing to consider Brad's motion to transfer venue, the district court asked whether Brian was a director at AAPLO. Defendant's counsel answered that Brian was not, as he was merely an employee and shareholder of AAPLO. Yet the record establishes that Brian was a director at the time. Brad now agrees that his attorney misspoke.

Yet, as Brad correctly notes, despite the false representation, the district court found that both Brad and Brian were responsible for AAPLO's advertising. And the district court ruled that it did not believe defendants' advertising in Cowley County was enough to establish venue. Because the record does not show that the district court relied on Brad's misstatement, Yudi's argument is unpersuasive.

The record does show that both Brad and Brian were residents of Wichita and were shareholders of AAPLO, located in Wichita. The contract between AAPLO and Ernesto was signed and negotiated in Sedgwick County. All work that the defendants did for Yudi was done in Sedgwick County. The district court considered all of these facts and found, in addition to what is identified above, that it would be more economical for Yudi to travel to Wichita rather than for all the attorneys to travel to Cowley County. We find no abuse of discretion in the decision to transfer venue to Wichita.

Affirmed.