**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 14, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CARLOS E. MORAL; JULIE K. MORAL,

    Plaintiffs - Appellants,

v.

PHH MORTGAGE CORPORATION;
OCWEN LOAN SERVICING, LLC,

    Defendants - Appellees,

and

BANK OF NEW YORK MELLON
TRUST COMPANY, THE NATIONAL
ASSOCIATION,

    Defendant.

No. 23-3123
(D.C. No. 6:21-CV-01070-HLT)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Carlos E. Moral and Julie K. Moral appeal the district court's grant of summary judgment in favor of PHH Mortgage Corporation ("PHH") and Ocwen Loan Servicing LLC ("Ocwen"). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

The Morals executed a mortgage to secure a loan to buy a home. The mortgage was assigned and then reassigned to various lenders, ultimately to Bank of New York Mellon Trust Company, N.A. ("BONY"). Ocwen later acquired the mortgage servicing rights. When Ocwen merged with PHH, PHH became the loan servicer.

After the Morals paid off the loan in full, PHH asked Indecomm Holdings, Inc. ("Indecomm"), a third-party vendor, to file a satisfaction of mortgage with the Grant County Recorder of Deeds (the "County").[1]  On the filing, Indecomm mistakenly listed a prior mortgage assignee as the releasing party instead of BONY. As a result, the County rejected the filing and returned it to PHH.

The Morals emailed the Office of the State Bank Commissioner for Kansas ("OSBC"), complaining that "[t]he lien release [wa]s not from the correct party." Aplt. App., Vol. III at 445. The OSBC contacted PHH about the complaint.

---

[1] Originally, Indecomm was named as a defendant. The parties later stipulated to its dismissal with prejudice.

After a few weeks of investigation, PHH discovered the mistake and filed a new satisfaction of mortgage that correctly listed BONY as the releasing party. PHH sent copies of the recorded satisfaction to both the Morals and the OSBC, and the OSBC informed the Morals that PHH had properly filed the release of lien.

### B. *Procedural History*

The Morals sued PHH and Ocwen, alleging that the erroneous release violated the Kansas Consumer Protection Act ("KCPA") and the Real Estate Settlement Procedures Act ("RESPA"). After the parties filed a pretrial order, PHH and Ocwen moved for summary judgment. In opposition, the Morals argued the pretrial order included two additional KCPA claims related to (1) additional interest liability they accrued from delayed payoff of their loan and (2) PHH and Ocwen's failure to record a power of attorney.

The district court held that the pretrial order did not cover the additional KCPA claims. It then granted PHH and Ocwen's motion for summary judgment, finding that the Morals failed to present evidence supporting their claims. The Morals timely appealed.

## II. DISCUSSION

### A. *Scope of the Pretrial Order*

The Morals argue the district court abused its discretion when it held the pretrial order did not cover their additional KCPA claims. Because the pretrial order alleged a KCPA claim related only to release of the loan, the court did not abuse its discretion by limiting the pretrial order to that claim.

"Because the district court is in the best position to interpret its pretrial order," we review its dismissal of claims not contained in the pretrial order for abuse of discretion. *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Vincent v. Nelson*, 51 F.4th 1200, 1213 (10th Cir. 2022) (quotation marks omitted). "We . . . defer to the district court's judgment so long as it falls within the realm of . . . rationally available choices." *Id.* (quotations omitted).

1. **Legal Background**

Federal Rule of Civil Procedure 16(d) provides that "[a]fter [a pretrial conference], the court should issue an order reciting the action taken. This order controls the course of the action unless the court modifies it." "The . . . pretrial order measures the dimensions of the lawsuit, both in the trial court and on appeal." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003). Fed. R. Cir. P. 16(e) states that "[t] he court may modify the [pretrial] order . . . only to prevent manifest injustice." "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived." *Cortez v. Wal-Mart Stores, Inc.*, 460 F.3d 1268, 1277 (10th Cir. 2006) (quotation marks omitted).

"[A] pretrial order should be liberally construed to cover any of the legal or factual theories that might be embraced by its language." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1220 (10th Cir. 2000) (alterations and quotations omitted). The court, however, "may more strictly construe [a pretrial] order when the party favoring

4

a liberal construction has had ample opportunity to refine the order and when the final order is properly drawn and substantially specific." *Id*. at 1220-21. Parties cannot avoid the pretrial order's binding effect by raising new issues in a response to a motion for summary judgment. *See Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991).

2. **Additional Procedural History**

    a. *Complaint and pretrial order*

The parties filed a pretrial order in which the Morals claimed PHH and Ocwen violated the KCPA through their "deceptive acts and practices" as described in Count III of their complaint. Aplt. App., Vol. I at 213. In Count III, the Morals alleged PHH and Ocwen "willfully us[ed] falsehoods and ambiguities in the creation and filing of the Morals' mortgage release filed with the Grant County Register of Deeds," and that "PHH further knowingly permitted Indecomm to allow its employees to execute both release documents as 'Vice President' of both PHH and its formerly merged and non-existent legal entity Ocwen." *Id*. at 39.

    b. *Summary judgment*

In opposition to summary judgment, the Morals argued PHH violated the KCPA by (1) making several misrepresentations to the Morals that delayed their ability to pay off their loan and caused additional interest to accrue and (2) failing to record a power of attorney.

The district court rejected this argument, concluding the Morals were attempting expand their KCPA claim to issues outside the pretrial order, which

covered only PHH and Ocwen's alleged misconduct in the preparation and filing of the mortgage release. It explained that the Morals "could have sought to formally amend" the pretrial order to include these KCPA claims, "[b]ut [they] chose to stand on their KCPA claim as stated in their . . . Complaint." *Id*., Vol. IV at 681. The court noted that although the complaint described the obstacles the Morals faced in paying off their loan, "those [allegations] were the subject of <u>other</u> claims" that the court had dismissed "some time ago," "<u>not</u> the KCPA claim." *Id*. at 682. Because "allow[ing] [the Morals] to expand the scope of their KCPA claim now that most of their RESPA claims have been dismissed [would be] unfair, inefficient, and not in the interest of justice," the court "limit[ed] the scope of [the Morals'] KCPA claim to encompass the activities and alleged aggrievement identified in Complaint." *Id*.[2]

3. **Application**

The Morals argue the district court abused its discretion by concluding the pretrial order did not cover its KCPA claims related to delayed payoff of its loan and failure to record power of attorney. They contend that (1) *Trujillo v. Uniroyal Corp.*, 608 F.2d 815 (10th Cir. 1979), requires the district court to liberally construe the pretrial order; (2) the

---

[2] The court also determined the Morals' power of attorney argument failed as a matter of law because "powers of attorney need not be recorded in Kansas." *Id*. at 685 n.6 (citing Kan. Stat. Ann. § 58-652(c)(1)).

pretrial order refers to the complaint, which covers those claims; and (3) the pretrial order's factual contentions support their claims.  We disagree.

a.  Trujillo v. Uniroyal Corp.*, 608 F.2d 815 (10th Cir. 1979)*

The Morals argue the district court failed to liberally construe the pretrial order, as *Trujillo* requires.  *Id.* at 818.  We disagree.  In *Trujillo*, the pretrial order described the plaintiff's claim as "strict liability."  *Id*.  When the defendant learned that the plaintiff planned to prove liability on a failure-to-warn theory, it objected, arguing the pretrial order did not contain that theory.  We held the plaintiff's reading of the pretrial order did not exceed the complaint when he "loosely used" a "term of art"—"strict liability"—to describe his claim in the order.  *Id.*  We explained that "strict construction [of the pretrial order] to avoid surprise or unreasonable ballooning of the trial [wa]s not necessary" because there were "only three closely related theories"—"manufacturing flaw, design defect, and failure to warn"— "underlying [the] term of art."  *Id.*

By contrast, a KCPA claim may include more than just a few closely related theories, and the Morals specifically linked their claim to Count III of the complaint, which alleged only flaws in the mortgage release.  The district court did not abuse its discretion in limiting the KCPA claim to the mortgage release filing.  *Trujillo* does not indicate otherwise.

b. *Allegations in the complaint*

The Morals argue the pretrial order incorporates Count III of their complaint, including their KCPA claims for the delayed payoff of their loan and for failure to record power of attorney.  This argument fails.

On the alleged delayed pay off, the Morals argue Count III "expressly alleges" they suffered "actual damages linked to the unmarketability of their home [resulting] from" deceptive acts and practices.  Aplt. Reply Br. at 3.  But the Morals did not list accrued interest damages in the complaint or the pretrial order.[3]

On the power of attorney, the Morals did not use the term "power of attorney" anywhere in the complaint, and their KCPA claim alleged the wrong party executed the initial release—not that PHH and Ocwen failed to record a power of attorney.  [4]

c. *Factual allegations in the pretrial order*

The Morals argue their factual allegations in the pretrial order include a KCPA claim for delayed payoff of their loan.  They provide no authority to support that a

---

[3] In the pretrial order, the Morals listed damages for (1) "Emotional Distress, Time, and Inconvenience"; (2) "Diminished Property Value/Lost Sale Opportunity due to Unmarketable Title"; (3) "Civil Penalties pursuant to KCPA"; (4) "Punitive Damages pursuant to KCPA"; and (5) "Attorneys' Fees to date pursuant to KCPA."  Aplt. App., Vol. I at 214.

[4] The power-of-attorney claim would fail in any event because the Morals were not "aggrieved" by the failure to record a power of attorney.  *See* Kan. Stat. Ann. § 50-634(a),(b) (providing generally that a consumer may not bring a private KCPA action for damages or a civil penalty unless the consumer has been aggrieved).  The district court found no evidence that any of the alleged flaws in the release affected the marketability of their home.  *See* Aplt. App., Vol. IV at 685.

pretrial order's factual allegations may provide defendants notice of an additional claim for relief not described elsewhere in the order.

*    *    *    *

The district court therefore did not abuse its discretion when it limited the Moral's KCPA claim to the mortgage release.

### B. *Summary Judgment*

The Morals did not present sufficient evidence to create a genuine dispute of material fact for their KCPA or RESPA claim.

"We review the district court's grant of summary judgment de novo, applying the same standard used by the district court." *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### 1. **KCPA Claim**

The Morals argue they presented sufficient evidence that they were aggrieved to survive summary judgment on their KCPA claim for improper release of their loan. We disagree.

#### a. *Legal background*

Plaintiffs must establish that a KCPA violation "aggrieved" them. *See Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 863 (Kan. 2013); *see also* Kan. Stat. Ann. § 50-634(a),(b) (providing generally that a consumer may not bring a private KCPA action for damages or a civil penalty unless the consumer has been

9

aggrieved).  To establish aggrievement, a KCPA plaintiff must demonstrate the deceptive act caused the claimed injury.  *See Schneider v. Liberty Asset Mgmt.*, 251 P.3d 666, 671 (Kan. Ct. App. 2011).

b.  *Additional procedural history*

PHH and Ocwen moved for summary judgment on the KCPA claim, arguing the Morals were not aggrieved consumers.  The district court agreed and granted summary judgment because the Morals presented no evidence that the release of their loan affected their home's marketability.

c.  *Application*

The Morals argue they were aggrieved because PHH and Ocwen imposed a lien through deception.  Even if this were so, the Morals still needed to show harm. Because they presented no evidence that the release affected their home's marketability, they were not "aggrieved" under the KCPA and could not recover damages.  As the district court stated, "[the Morals] offer[ed] nothing but unsupported speculation that they have been aggrieved by Defendants' actions.  They have not placed their house on the market or submitted testimony of a real estate agent or an agent for a title company."  Aplt. App., Vol. IV at 685.  PHH and Ocwen were entitled to summary judgment on the KCPA claim.

2. **RESPA Claim**

The Morals argue they presented sufficient evidence to survive summary judgment on their RESPA claim.  We disagree.

10

a. *Legal background*

"Under RESPA, a servicer of a federally related mortgage loan may be liable for damages to a borrower if it fails to adequately respond to a qualified written request (QWR)." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013) (quotations omitted); see also 12 U.S.C. § 2605(e)-(f).  A QWR is "a written correspondence" that includes "a statement of the reasons for the belief of the borrower . . . that the account is in error . . . ."  *Id*. § 2605(e)(1)(B)(ii).  When the borrower submits a QWR, the servicer has 30 days to either correct the error or conduct a reasonable investigation and explain why the account is correct.  Id. § 2605(e)(2)(A),(B); 12 C.F.R. § 1024.35(e)(1)(i)(A),(B), (3)(i)(C).

To prevail on a RESPA claim, borrowers must show actual damages from a servicer's noncompliance.  *See* 12 U.S.C. § 2605(f)(1)(A); *see also Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (dismissing complaint under Fed. R. Civ. P. 12(b)(6) for failure to plead actual damages); *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 720-21 (8th Cir. 2018) (remanding with directions to enter summary judgment in favor of loan servicer where plaintiff failed to present evidence of damages resulting from servicer's failure to comply with RESPA).

b. *Additional procedural history*

In response to the summary judgment motion, the Morals argued that PHH violated RESPA because it "failed to conduct a reasonable investigation in connection to its response because it used a vendor to conduct the investigation into the missing mortgage assignment and the vendor filed a mortgage release that [the

11

Morals] believe[d] ha[d] other shortcomings." Aplt. App., Vol. IV at 690 (district court order).[5] The district court found that the Morals' "arguments suffer[ed] a timing issue" because they discovered the new alleged errors after PHH investigated the Morals' original QWR and corrected the release. *Id*. at 691. The Morals "could have filed a QWR identifying" the new issues, but "[t]hey did not." *Id*.

### c. *Application*

The Morals argue they presented sufficient evidence of a RESPA violation to survive summary judgment. They did not. When PHH received the QWR,[6] it investigated and corrected the error. The Morals presented no evidence that PHH discovered other errors during its investigation that would render the release ineffective. If the Morals believed PHH's investigation or the new release contained errors, they could have filed a QWR identifying those issues, but they did not.

### III.   CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[5] In the pretrial order, the Morals also alleged PHH violated RESPA by failing to correct the QWR's alleged error, Aplt. App., Vol. IV at 689, but they conceded that PHH had corrected the release at summary judgment. *See id*., Vol. III at 410.

[6] The parties agree that Mr. Moral's email complaining about the wrong party having executed the release was a QWR.