No. 44,773

GLADYS VAN WELDEN, *Appellee*, v. RAMSAY'S INC., a Corporation, *Appellant.*

(430 P. 2d 298)

Opinion filed July 12, 1967.

*William Hergenreter*, of Topeka, argued the cause, and *Warren W. Shaw, Carl W. Quarnstrom* and *James C. Wright*, all of Topeka, were with him on the briefs for the appellant.

*Robert F. Duncan* and *Richard P. Senecal,* both of Atchison, argued the cause, and *Richard A. Dempster,* of Atchison, was with them on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This was an action for damages resulting from injuries sustained from a fall down the stairs extending from the first floor to the basement of a retail department store.

The defendant, Ramsay's Inc., operates a retail department store in Atchison, Kansas. The store building has a basement floor which is reached from the first floor by a stairway facing to the west. The stairway extends ten steps down to a landing, makes a turn and continues a few more steps to the basement floor. There is a handrail for the entire length on the south side of the stairway. The handrail starts at floor level on the north side. The stairs are made of oak with metal nosing on the foreward edge of the treads held down with counter sunk screws.

On March 10, 1964, plaintiff went to the Ramsay store with her daughter, Doris Noble. Doris went to the basement floor and later plaintiff started down. The plaintiff testified:

". . . I decided to go downstairs while my daughter was downstairs. I had been back at the dress department looking for a dress, this was North from the stairs. When I went towards the front of the store I just walked back there to go down the stairs and I caught my heel on something there at the head of the stairs, the metal strip that was across the head of the stair before I took the first step.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. All right. What makes you think you caught your heel? What makes you think you fell over something?

"A. I felt a tug at my heel as I stepped there.

"Q. I see. What did you do, then?

"A. Well, that's when I fell.

"Q. I see. Please tell this Jury whether you attempted to grab for a handrail?

"A. Yes, I tried to—there is just a part of the railing there on the right-hand side, so I just really tumbled down the stair."

Plaintiff was taken to the hospital in an ambulance and remained there for 29 days. She was treated for compression fracture of the seventh dorsal vertebra, lacerations of the scalp and other minor lacerations and bruises about the face.

Other facts will be presented as we consider the legal issues to which they apply.

The plaintiff brought an action against Ramsay's Inc. for damages as a result of the injuries sustained in the fall down the stairs. The trial resulted in a jury verdict in favor of the plaintiff and against the defendant for $17,500. A motion for new trial was overruled and the defendant has appealed.

The appellant raises numerous trial errors. We will first consider those objections going to the admissibility of evidence.

Appellant contends that the trial court erred in admitting as an exhibit an artist's sketch of a thoracic vertebra. The exhibit showed four separate sketches.

The exhibit was introduced through appellee's physician and surgeon. His narrated testimony presents the facts involved in this issue. We quote:

". . . I attended Gladys Van Weldon on March 10, 1964. I have attended her continuously since that time. I treated her for a compression fracture of the seventh dorsal vertebra of her back, and also laceration of the scalp and other minor lacerations and bruises about the face. I have seen what has been marked for identification purposes as plaintiff's Exhibit No. 9. I recognize the documents which are attached to that large chart. There are illustrations of the vertebra, first showing the generalized anatomy, one showing the illustration of the fractured vertebra, the third one shows the resulting —shall we say, deformity of the vertebra after the fracture and the fourth one is a composite of two and three. The fourth illustration factually and truthfully represents the x-rays that were taken under my supervision on March 10, 1964 and September 22, 1965, and were taken from the x-rays plates submitted. I compared them.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"I did not prepare this sketch. Document No. 1 on this chart, that is the one on the left, does not refer to this patient. The second document from the left, according to the artist, was taken from the x-ray. The third one likewise was supposed to be taken from a later x-ray. I do not know myself whether the second and third documents were taken from the x-rays. The x-rays were submitted to the artist. I compared the x-rays and the sketches and they do correspond to the illustrations as shown in the x-ray."

We see no error in allowing the physician to use sketches of the thoracic vertebra to illustrate appellee's injury where they accurately portrayed that which was competent to describe in words. We see no reason to distinguish between medical illustrations, and charts and drawings to establish other physical facts. If the sketch be a substantially correct reproduction of the injured part of the anatomy it should be admissible within the trial court's discretion. The physician testified:

". . . I compared the x-rays and the sketches and they do correspond to the illustrations as shown in the x-ray."

A fractured vertebra is not discernible except through x-ray pictures which a layman is not qualified to analyze. A fracture line may not even be discerned by the naked eye of an expert. Certainly a substantially correct reproduction which is clearly visible is helpful as an aid to a verbal description of the injured vertebra.

We are cited no cases where this specific question has been passed on by this court and our limited search has disclosed none. However, the general rule appears to be well established. In 29 Am. Jur. 2d, Evidence, § 805, p. 894, we find this statement:

"Medical or anatomical charts showing a human skeleton or a part of a human body have been admissible, in the discretion of the trial court, in a number of cases. The test as to the admissibility of medical and anatomical charts is their capacity to inform the jury, and where they are accurate and fully explained, they are admissible even though abstract.

"Both in criminal and civil cases, where the problem of the admissibility of a skeleton or model of a human body or a part thereof has been presented, the courts are in apparent agreement that if the jury or court will be enlightened by the introduction of such evidence, it is admissible within the trial court's discretion. Such a model, if otherwise relevant and admissible, may be received in evidence even though it may be of a shocking or gruesome character."

We must conclude that the trial judge did not abuse his discretion in admitting the anatomical sketch as an exhibit.

Objection is made to the admission in evidence as exhibits the Rehabilitation Code of the Urban Renewal Area of Atchison, Kansas, and the Uniform Building Code.

The Uniform Building Code was incorporated into ordinances of the city of Atchison. The two codes contained the same language insofar as they covered the issue in controversy except the Uniform Building Code contained a grandfather clause.

The specific factual issue involved was the proper construction of the stairway where the accident occurred. The two codes mentioned above required that stairs exceeding 44 inches in width "shall have handrails on both sides." As we have previously noted the south or lefthand side of the stairs had a satisfactory handrail, while on the north or righthand side the handrail started at the floor level.

The trial court admitted the exhibits, not as proof of the violation of a city ordinance, but rather to show a standard for a safe stairway.

The appellant's chief objection to the exhibits is a claim of surprise. Surprise is based on appellant's contention that at the pretrial conference the appellee claimed negligence in connection with the construction of the treads of the stairway and made no mention of faulty handrails.

The difficulty in considering this objection is the fact that no record was made of the pretrial conference and the results were not reduced to judgment. Under such circumstances a pretrial conference accomplishes nothing definite. Rather than limit issues it serves as a vehicle for additional argumentative issues as to what was purported to be done. It is the responsibility of both trial judge and counsel to see that a proper record is made of a pretrial conference and the results properly noted by judgment or order.

The trial court admitted the Urban Renewal Rehabilitation Code on the basis of appellant's opening statement. The Uniform Building Code contained the same language. Appellant's opening statement reads in part:

"Our evidence will show that in January 7, 1965, the Ramsay Store was issued a certificate by the officials of our town, certifying that your store had been inspected and complied with your plans and requirements of your Urban Renewal problem. You're issued by Kenneth Jorgensen and your Urban Renewal director. Evidence will also show that the Ramsay Store complies in all respects with your City Ordinances, insofar as design and handrails are concerned on the staircase."

Appellant suggests that an opening statement is not a substitute for pleadings or material evidence. Perhaps not but it may well tend to dispose of a claim of surprise.

It should also be noted that appellant admits that two weeks before the trial it was informed by appellee that evidence of defective handrails would be presented as one of the claims of negligence. It would appear that the appellee, by the introduction of the two codes, did nothing more than introduce the facts which appellee stated it was going to prove.

We have not ignored at this point appellant's suggestion that appellee stated in a deposition that she approached and started down the stairway from the south, or left, but testified at the trial she approached and started down the stairs from the north, or right. The confusion between the deposition and the testimony was a question for the jury in the absence of a pretrial determination.

Objection is made to the admission of the testimony of appellee's physician and surgeon as to x-ray interpretations and information obtained from another doctor.

We find no merit in this contention. The x-ray interpretation to which the objection was made was that of a roentgenologist to the effect that there was a compression fracture involving the T7 dorsal

vertebra. The interpretation of the roentgenologist was contained in a hospital report. The report was introduced in evidence without objection.

The witness testified that in his opinion based upon his own examination that the appellee was suffering from a compressed fracture of a vertebra. His opinion that it was the T7 vertebra was based on the information contained in the hospital report which was in evidence—the x-ray interpretation by the roentgenologist.

An expert witness may base his opinion on competent evidence in the case. In *Klein v. Wells*, 194 Kan. 528, 539, 400 P. 2d 1002, we stated:

"It has long been settled that an expert witness may base his opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case, or upon both. . . ."

The appellant contends the trial court abused its discretion in taking judicial notice of the fact that the building involved in the litigation was located within the Urban Renewal Area of Atchison, Kansas.

This dispute arose in connection with the objection to the consideration of the Rehabilitation Code of the Urban Renewal Area. At the close of all the evidence the appellant moved that the exhibit be withdrawn from the consideration of the jury. One of the reasons given was lack of evidence to establish the fact that Ramsay's Department Store was in the urban renewal area. At the request of appellee the court stated that it would take judicial notice of such fact.

We find no error in the decision of the trial court to take judicial notice of such fact. The rules of evidence, K. S. A. 60-409, provide in part:

"(b) Judicial notice may be taken without request by a party, of (1) . . . duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state, and . . . (3) such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute, . . ."

Urban renewal areas are created by municipal resolutions or ordinances. (K. S. A. 17-4746.) It would also appear that the interest created by an urban renewal area leaves little doubt that its boundaries are generally known within the territorial jurisdiction of the court.

The purpose of the judicial notice rule, and it would appear to be a wholesome one, is to eliminate the necessity of taking the time of the court and jury to make formal proof of a fact which cannot be disputed.

The appellant contends that the trial court erroneously permitted appellee to read a part of a letter on cross-examination but refused to permit it to introduce the remainder.

The facts out of which this controversy arose present a procedural question rather than a question of evidence.

The appellee was cross-examining an architect who appeared as a witness for appellant. The appellee read a paragraph from a letter which another architect had written to the attorney for appellant and asked the witness if he agreed with it. The witness replied that he did. Appellant objected to the partial offer and offered the entire letter in evidence. Appellee objected to the appellant interfering with his cross-examination. The introduction of the entire letter at that point was not permitted. Appellant states:

"We believe it is generally recognized law that if a portion of a letter or conversation is brought before the jury the other side is entitled to have placed in evidence all that was said or written in the particular conversation or correspondence. . . ."

We have no quarrel with appellant's suggestion. However, one party cannot interrupt another party's cross-examination for the purpose of starting its redirect examination. If appellant desired to introduce the letter in its entirety he should have done so at the close of appellee's cross-examination. Having failed to do so we find no ground for complaint. The order of proof is in the discretion of the trial court. In *State v. Neff*, 169 Kan. 116, 218 P. 2d 248, we held in paragraph 8 of the syllabus:

"It is always desirable that there should be an orderly presentation of proof. Rules pertaining thereto, however, are directory and not mandatory. An alteration in the prescribed customary order of proof rests in the sound judicial discretion of the trial court and the court's ruling will not be disturbed on appeal unless its exercise of discretion is abused."

Finally, the appellant complains of the sufficiency of the evidence to establish any negligence on its part and also claims that the verdict was excessive. It would serve no useful purpose to extend this opinion by a review of all the evidence on these issues. It will suffice to say that there was substantial competent evidence to support the verdict and its weight was a question for the trier of facts, not this court on appellate review.

Although we have not specifically mentioned every phase of the numerous trial errors raised by industrious and able counsel for appellant they have not been overlooked.

A careful examination of the record discloses no trial errors which were prejudicial to the rights of appellant.

The judgment is affirmed.

APPROVED BY THE COURT.