NOT DESIGNATED FOR PUBLICATION

No. 126,255

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

YUDI HERNANDEZ (STEPHEN BRAVE),
*Appellant*,

v.

BRAD PISTOTNIK,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY and MERYL WILSON, judges. Oral argument held July 9, 2024. Opinion filed August 16, 2024. Affirmed in part, vacated in part, and remanded with directions.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellants.

*N. Russell Hazlewood* and *Nathan R. Elliott*, of Graybill & Hazlewood LLC, of Wichita, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

MALONE, J.: Stephen Brave, counsel for Yudi Hernandez, appeals the district court's order imposing sanctions against him under K.S.A. 2023 Supp. 60-211, K.S.A. 2023 Supp. 60-226, and the inherent powers of the court. Brave raises many claims on appeal including that the district court engaged in judicial misconduct by independently investigating facts not introduced into evidence and relying on them in its ruling, that the district court imposed a punitive sanction without affording Brave the protections of a criminal defendant, that the district court applied the wrong legal standard in determining

1

whether Brave should be sanctioned under the inherent powers of the court, that the district court erred in finding that Brave violated K.S.A. 2023 Supp. 60-211, and that the district court erred in failing to sanction Brad Pistotnik (Brad) and his counsel for committing discovery fraud. We reject all these claims and affirm the district court's judgment granting sanctions against Brave. The district court initially afforded Brave an evidentiary hearing to determine the proper amount of the sanctions but later abandoned the scheduled bench trial and, without giving proper notice, summarily awarded $275,000 in sanctions against Brave. Because of the violation of Brave's procedural due process rights, we vacate the amount of sanctions awarded by the district court and any findings associated with the award, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

*Background and appeal in* Hernandez I

This case has an extensive history and has seen multiple appeals. This court in *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 472 P.3d 110 (2020) (*Hernandez I*), summarized the underlying facts as follows:

"In June 2013, Yudi [Hernandez] was injured as a passenger in a two-car accident. She was 17 years old and suffered multiple injuries. The accident rendered her unconscious and doctors placed her in a drug-induced coma for one month. She was also given a tracheostomy tube so she was unable to speak for two months after she regained consciousness.

"After the accident, Yudi's father (Ernesto Hernandez) told Yudi's sister (Mirna Hernandez) that Yudi had been involved in a serious car accident. Because Yudi's parents spoke little English and Ernesto could not read in English or Spanish, Mirna helped the family find an attorney. Mirna first called a family friend who recommended that they hire Brad. The family friend knew about Brad from his television commercials. So Mirna looked for Brad's television advertisements and saw he was claiming he could collect millions of dollars for car accidents. Those advertisements touted large settlement

2

amounts and no attorney fees if the client got no money for the injury. Mirna went to Brad's office—the law office for the Affiliated Attorneys of Pistotnik Law Offices (AAPLO) in Wichita.

"Mirna had an initial consultation with Brian Pistotnik. A few days later, Ernesto—with Mirna's assistance—retained AAPLO to pursue Yudi's bodily injury claim against the drivers of the two vehicles involved in the accident. This agreement defined AAPLO as the attorney and Yudi as the client through her natural father. But according to Brad, Brian was the only person who negotiated that agreement for AAPLO and was the only attorney who worked on Yudi's case.

"In August 2013, Electric Insurance Company offered to pay its liability policy limits of $100,000 to settle Yudi's claim. And in October 2013, Farmers Insurance Group tendered its liability policy limits of $50,000. So, by November 2013, Brian had obtained policy limit offers totaling $150,000 from the liability insurers of the drivers alleged to be at fault for Yudi's injuries. Yet before accepting these offers, Ernesto fired AAPLO and hired Steve Brave, who had previously worked at AAPLO, to perform the remaining work necessary to resolve Yudi's claim.

"Shortly after his termination, Brian filed a notice of attorney's lien for AAPLO and served it on the liability insurers. The lien sought $1,504.25 for costs and $49,498.58 in attorney fees against any funds, proceeds, or monies payable to Yudi as a result of injuries and damages sustained in her accident.

"In May 2014, Ernesto and Yudi entered into written settlement agreements. These agreements released the drivers of the two vehicles in the accident and the automobile insurers from all liability in exchange for $150,000—the same amount insurers had earlier offered to Brian. That money was to be paid directly to Ernesto and was not payable to Yudi.

"After the settlement agreements were signed, Brave contacted the health care providers to whom Ernesto owed unpaid medical bills for Yudi. The providers agreed to take reduced amounts of money to settle their accounts in full. After Brave's negotiations, Ernesto paid $51,570.80 to health care providers for Yudi's injuries, and $32,809.73 to Brave for attorney fees. Brave then paid Ernesto the remaining $65,619.47 by check payable to Ernesto. Ernesto immediately endorsed this check to Yudi, who deposited it into her personal bank account.

"Brian then sued Ernesto to recover the amount sought in the AAPLO lien. And Yudi sued Brian and Brad, arguing they had defrauded her and violated the Kansas

3

Consumer Protection Act. She filed her suit in Cowley County, but the district court later granted Brad's motion to transfer venue to Sedgwick County.

"Throughout litigation, several discovery disputes arose when Yudi requested production of AAPLO advertisements and settlements with other clients, and a response Brad had made to the office of the Kansas Disciplinary Administrator (KDA) when someone filed a complaint against him. Defendants objected, responding that the settlement and disciplinary documents were privileged and not subject to discovery. At first, the district court found that the settlements were discoverable. But after an in camera inspection, the district court determined the settlements were confidential so it issued a protective order limiting the production of information in them. The district court also found that Brad's response to the KDA was not discoverable.

"In due course, Brad moved for summary judgment, arguing Yudi had failed to state a claim on which relief could be granted and had failed to produce sufficient evidence of fraud. Brad also argued that Yudi could not recover under the KCPA because she was not an aggrieved party.

"The district court granted Brad's motion. It found that because Yudi had not seen Brad's advertisements before hiring AAPLO, Yudi's misrepresentation claim necessarily relied on an indirect reliance theory. Even assuming, however, the applicability of that theory, the district court found no evidence suggesting that Ernesto— through Mirna or any other party—had received and indirectly relied on the alleged misrepresentations in the advertisements when he hired AAPLO on Yudi's behalf. Thus, Yudi failed to present sufficient evidence of fraud. Similarly, the district court held that Yudi showed no legal authority that she could bring a KCPA claim based on indirect reliance on a misrepresentation. Thus, the district court dismissed Yudi's claims and granted summary judgment for Brad. Although Yudi moved to reconsider, the district court denied her request." *Hernandez I*, 58 Kan. App. 2d at 502-04.

On appeal, this court affirmed the grant of summary judgment because Yudi had failed to raise a genuine issue of material fact that she relied on any fraudulent advertisement in hiring Brad. 58 Kan. App. 2d at 514. This court determined that Yudi failed to produce any evidence in discovery showing that she or her father, Ernesto, "saw any AAPLO advertisement that included a fraudulent representation before Ernesto retained the firm." 58 Kan. App. 2d at 512. This court also found that the district court

abused its discretion when it denied some of Yudi's discovery requests based on confidentiality, but it found the error harmless. 58 Kan. App. 2d at 514-17.

*Postjudgment discovery motions and subsequent appeal in* Hernandez II

During the discovery phase in *Hernandez I*, the district court entered a protective order limiting the use of confidential discovery including Brad's deposition testimony. *Hernandez v. Pistotnik*, 60 Kan. App. 2d 393, 395-96, 494 P.3d 203 (2021) (*Hernandez II*). After the district court's grant of summary judgment, Brad filed four separate postjudgment motions to enforce the protective order after Brave tried to "declassify Brad's deposition and add the entire deposition transcript to the record on appeal [in *Hernandez I*]." 60 Kan. App. 2d at 397. The district court resolved each of the motions, at least in part, in Brad's favor and imposed two monetary sanctions against Brave.

After perfecting his appeal of the order granting summary judgment in *Hernandez I*, Brave brought a separate appeal on behalf of Yudi to challenge the district court's rulings on Brad's motions to enforce the protective order (*Hernandez II*). This court dismissed the appeal in part, finding that Yudi lacked standing to appeal the district court's rulings in postjudgment litigation after the appeal in the underlying case had been decided. 60 Kan. App. 2d at 412-15. As for the sanctions against Brave, this court found no abuse of discretion in the postjudgment sanctions orders. 60 Kan. App. 2d at 420-23.

*The current sanctions order*

This appeal arises from a district court order imposing sanctions on Brave after the resolution of the appeals in *Hernandez I* and *II*. On September 27, 2018, one month after the district court granted Brad's motion for summary judgment, Brad filed a motion for sanctions under K.S.A. 2018 Supp. 60-211(c), K.S.A. 2018 Supp. 60-226(f)(3), and the inherent powers of the court. The motion included a statement of material facts

discussing the litigation history between Brave and Brad in this case and similar proceedings. Brave responded with a denial of any wrongdoing.

The district court held a lengthy hearing on the motion on October 19, 2018. At the hearing, Brad alleged that Brave had misused "his attorney-client relationship, wherein he has represented a client who apparently doesn't realize that she is merely a vehicle for him to pursue litigation against Brad that he wants to pursue by any means necessary." The district court heard a summary of the approximately 10-year, multi-case litigation history of Brave suing Brad. Brad presented 21 exhibits, all of which were admitted into evidence without objection from Brave. Among those admitted exhibits was a written summary of the litigation history surrounding this case and others; excerpts from Brave's deposition; various court filings and discovery responses purported to show Brave's dishonesty with the court; and communications between Brave and Brad purported to show Brave's dishonesty and vindictive nature toward Brad. Brave again denied wrongdoing and generally argued that his actions were in furtherance of Yudi's legitimate claims. After the hearing, the district court took the matter under advisement.

Over three years passed without an order resolving Brad's motion for sanctions. During that time, Brave's direct appeal of the summary judgment and his appeal of the postjudgment discovery motions had been decided by other panels of this court in 2020 and 2021. *Hernandez I*, 58 Kan. App. 2d 501; *Hernandez II*, 60 Kan. App. 2d 393. Then, on March 11, 2022, the district court entered a 64-page written order on the motion for sanctions. The district court explained the delay in entering its order was because the court had waited for other appeals between the parties to be resolved.

In its written order, the district court acknowledged the factors for considering sanctions under K.S.A. 60-211 set forth in *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000). The district court noted that some of those factors required it to consider whether Brave's actions were part of a pattern of activity or whether Brave was engaged

in similar conduct in other litigation. Thus, the district court stated that it had considered other cases discussed in Brad's motion and argued without objection. The district court observed that "[m]any, but not all, of the cases started as attorney lien disputes, where Brian, Brad or AAPLO asserted attorney liens against recoveries in cases that Brave somehow became the subsequent attorney." The order listed these cases:

"1. *Brave v. Brad, Brian, and AAPLO, Truck Accident Lawyer Group*, SG County No. 2010 CV 2730 (Brave's lawsuit against Brad and Brian after Brave terminated his employment with AAPLO);

"2. *Consolver v. Hotze*, SG County, No. 2011 CV 3868 '*Consolver* [*I*]' (Consolver's personal injury lawsuit in which Brad claimed and litigated an attorney fee lien after Consolver terminated Brad and hired Brave);

"3. *Brad v. Brian, and AAPLO*, SG County No. 2014 CV 1710 (AAPLO dissolution case, Brave was not a party but tried to intervene);

"4. *Consolver v. Brad, and AAPLO*, SG County No. 2015 CV 1732 '*Consolver* [*II*]' (class action filed by Brave, including KCPA claims arising out of alleged false advertising);

"5. *Yudi v. Venable, Banta* (Cowley County) (Yudi's personal injury claim started by Brian, then Brave replaced Brian after Brian obtained policy limits settlement offers);

"6. *Brian v. Farmers Ins. Co, Electric Ins. Co, Brave, and Ernesto, Brave, Ernesto v. AAPLO, Kevin McMaster*, and *McMaster & McMaster PA.*, SG County No. 2016 CV 172 (Brian's lawsuit against Brave, Ernesto, and two insurance companies for not honoring Brian's attorney lien against Yudi's recovery, with Brave and Ernesto filing a third party claim against AAPLO);

"7. *Yudi Hernandez v. Brad and Brian*, SG County No. 2016 CV 285 (this current case);

"8. *Brave Law Firm vs. Brad, et al.*, U.S.D. Kan., 2017 CV 1156 (Mag. Gale, Mag. O'Hara, DJ Melgren) (Brave's personal federal Lanham Act case against Brad, alleging KCPA violations and harm to Brave's legal business from alleged false advertising); and

"9. *B.E. v. Brad, Tony Atterbury, and BPL*, SG County No. 2018 CV 1610 (Brave files malpractice, fraud, and KCPA claim against Brad and Atterbury arising from Atterbury's representation of B.E. in B.E.'s personal injury claim against B.E.'s former boyfriend."

The district court emphasized that its "discussion of the other cases is only part of the analysis for Brave's motives in how and why he pursued Yudi's case. The court wants to be clear that the court is not considering this motion as a request for sanctions for Brave's actions taken in those cases." After taking judicial notice and considering the court files in the other cases, the district court walked through the *Wood* factors and found that most weighed in favor of Brad's request for sanctions against Brave. Among other things, the district court reached these conclusions:

> "But in this case, Brave filed a lawsuit for Yudi not just against Brian, but also against Brad. As the court has repeatedly stated, the evidence is that Yudi did not hire Brian, that Yudi had never met Brad before this current lawsuit was filed, and that Yudi didn't know she was a plaintiff.
>
> "Importantly, Yudi testified in her deposition that she had not been harmed by Brad and didn't want anything from Brad.
>
> "Again, Yudi did not know she was a plaintiff and Yudi thought she was the one being sued.
>
> . . . .
>
> "Regarding Brave's actions in this case, the court concludes Brad has proven Brave's improper motives in litigating this case, Brave's engage[ment] in deception and or lack of candor to the court; and Brave's misuse of his attorney-client relationship, wherein Brave has represented a client who apparently didn't realize that she (Yudi) has been merely a vehicle for Brave to protect Brave's fees and to pursue litigation against Brad by any means necessary.
>
> "Brave['s] actions in this case were part of Brave's multiple case motive to use the courts to obtain information to attempt to get Brad's confidential third party settlement documents, to attempt to abuse Brad's deposition transcript to publicly humiliate Brad, and ultimately to shut down Brad's law practice.
>
> "In applying the *Wood* factors, the court finds Brad has met his burden of proving that he is entitled to sanctions pursuant to K.S.A. 60-211. In addition, Brad has met his burden of proving he is entitled to sanctions under K.S.A. 60-226 and the inherent power of the court.
>
> "The court concludes monetary sanctions appropriate."

8

Near the end of its order, the district court discussed its obligations under Rule 2.15(D) of Canon 2 of the Code of Judicial Conduct. Kansas Code of Judicial Conduct, Rule 601B, Canon 2, Rule 2.15(D) (2024 Kan. S. Ct. R. at 497). The district court stated:

> "Given the facts articulated in [this] order, and consistent with what the court believes are its obligations under Rule 2.15(D) to be, the Court gives notice to Mr. Brave as follows:
>
> "Mr. Brave's conduct in bringing this case against Brad, in investigating this case against Brad, in conducting discovery in this case, in complying with the court's orders obtained by Brad and in representations made to the court, in particular [to] Judge Dahl [the discovery judge], may implicate, at a minimum, [Kansas Rules of Professional Conduct] KRPC 3.1, 3.2, 3.3, and 4.4."

The order allowed Brad to request an assessment of fees, with time for Brave to respond and object. The final sentence in the order stated: "If the parties want to argue the fees request, if either [of the] parties want an evidentiary hearing, or both, the parties will contact the court for dates." Brad filed his request for assessment of fees on August 16, 2022. In the fee request, Brad listed various invoices showing that he had incurred $398,115 in attorney fees in this case. Attached to the request were two declarations, one from Russell Hazlewood and one from Charles Millsap, two attorneys representing Brad, both attesting that Brad had paid each of the invoices listed and that they were accurate. Brad sought sanctions in the lesser amount of $275,000 "[i]n the hope of simplifying the process by avoiding unnecessary arguments over various time entries." Brave objected to the fee request on the same day it was filed and requested an evidentiary hearing.

The district court held a status conference on August 16, 2022. Brad stated through counsel that to support his fee request, he had hand delivered invoices of the costs incurred in this case to Brave. Brad also requested an evidentiary hearing on the assessment of fees and to give Brave time to conduct discovery. The parties agreed to a scheduling order with October 14, 2022, as the deadline for plaintiff's disclosure of expert

9

witnesses; February 17, 2023, as the defense expert disclosure deadline; discovery cutoff on March 31, 2023; a pretrial conference on April 20, 2023; and a bench trial on May 11, 2023. The district court entered a minutes order reflecting this schedule. On August 22, 2022, Brave moved for Judge William S. Woolley, who had presided over the sanctions hearing and entered the sanctions order, to recuse himself.

On September 12, 2022, Judge Woolley held a hearing on Brave's recusal motion. Part of Brave's argument was that Judge Woolley had improperly and independently researched the various other cases related to Brave's litigation against Brad discussed in the order imposing sanctions. Judge Woolley found that Brave had not presented sufficient grounds for recusal. As for Brave's argument about the court looking at other cases, Judge Woolley observed that Brad's counsel had referenced the other cases in the motion for sanctions and in the argument to the court with no objection, so it was not improper for him to look at the court files "under the circumstances of the way the motion was pleaded." Although Judge Woolley did not recuse himself based on Brave's motion, he found that when a criminal contempt case between Brave and Brad was reassigned to a different judge, it would be better practice to have this case reassigned as well. Judge Woolley asked the judicial district's chief judge to reassign the case, and the case was reassigned to Senior Judge Meryl Wilson.

Senior Judge Wilson held a brief hearing on January 12, 2023. At the hearing, Brave announced his intention to move to set aside the sanctions order and requested a hearing. The district court scheduled a hearing on the motion for March 24, 2023.

On March 10, 2023, Brave moved to set aside the sanctions order. In the motion, Brave alleged that the sanctions order was procured by fraud because Brad had willfully withheld discovery about a $9,000,000 or $9,500,000 settlement and his withholding had been the real cause of the prolonged litigation. The same day, Brave moved for an order to appear and show cause why Brad and his counsel should not be held in contempt of

10

court. Brad filed a brief in opposition on March 17, 2023, where he argued that "[t]he issues concerning the advertised $9.5 million settlement and confidentiality have been litigated through final judgment more often than once. Brave has caused and continues to cause an extraordinary mess of expensive, time consuming, and unnecessary litigation."

On March 20, 2023, Brad's counsel emailed Senior Judge Wilson asking for clarification about what matters would be addressed at the March 24 hearing and whether it would include an evidentiary hearing on the fee application. The next day, Senior Judge Wilson responded:  "The parties should be prepared to take up all issues."

The district court held a Zoom hearing on March 24, 2023, with Senior Judge Wilson presiding. The district court first heard arguments on Brave's motion to set aside the sanctions order, and the court denied the motion. The judge stated, "I have not heard any new information or facts which would require me to reconsider or set aside Judge Woolley's Order, and I do not believe that he in any way abused his discretion." The district court next heard arguments on Brave's motion to find Brad and his counsel in contempt for committing discovery fraud. The district court denied that motion, finding that the issues had been addressed before by other judges and denied.

The district court then asked counsel for arguments on Brad's request for assessment of fees. Brave pointed out that Judge Woolley had set up a discovery schedule and requested "that we be given time to do what Judge Woolley had allowed and conduct discovery." The district court seemed content that the invoices and declarations had been filed since August 16, 2022, and that no more discovery was needed. Brad's counsel, Hazlewood, asked that Millsap's declaration be admitted into evidence. Brave objected and requested that Millsap testify. The district court admitted Millsap's declaration into evidence without his testimony. Hazlewood then asked that his own declaration be admitted into evidence, and the district court granted the request. No other evidence was admitted on the fee issue, and the rest of the hearing consisted of arguments of counsel.

11

After hearing arguments of counsel, the district court ruled on Brad's request for assessment of fees. Senior Judge Wilson prefaced his ruling by stating, "In my over 25 years as a District Judge I haven't quite seen anything approaching this, and I'm not sure why a case such as this which was settled—not tried but settled brings us here today but it does." The judge stated that he had reviewed the time sheets and expenses and found "the request for $275,000 to be reasonable and that will be my Order." Brave asked the district court to stay the order pending an appeal, but the court denied that request.

Although Senior Judge Wilson made no other findings from the bench, he later filed a journal entry with the following finding:

> "3. In light of the unusual circumstances presented, an award of monetary sanctions of Two Hundred Seventy-Five Thousand Dollars ($275,000.00) is an appropriate amount to penalize Stephen Brave, as the party who engaged in abusive and unreasonable litigation conduct; to partially compensate the offended party, Brad Pistotnik; and to deter others, and especially other licensed attorneys who appear before the district courts of the State of Kansas, from engaging in similarly abusive and/or unreasonable conduct."

The journal entry granted judgment for Pistotnik against Brave in the amount of $275,000. Brave timely appealed the district court's judgment.

JUDICIAL MISCONDUCT CLAIM

The thrust of Brave's appeal is that Judge Woolley committed judicial misconduct by relying on facts not in the record to support the order imposing sanctions. He claims the district court erred by taking judicial notice of the cases cited in the order imposing sanctions and improperly engaged in an independent investigation into the court files. In response, Brad asserts that Judge Woolley properly considered the other lawsuits filed by Brave against Brad in determining Brave's bad faith intentions. Brad argues that Brave's

12

failure to object constituted a waiver. Finally, Brad argues that any error by the court in considering the other cases was harmless.

Appellate courts have unlimited review over judicial misconduct claims and consider the particular facts and circumstances surrounding the allegation when reviewing the claims. *State v. Boothby*, 310 Kan. 619, 624, 448 P.3d 416 (2019). The party alleging judicial misconduct has the burden of establishing that the misconduct occurred and that it prejudiced the party's substantial rights. *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018).

"A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may be properly judicially noticed." Kansas Code of Judicial Conduct, Rule 601B, Canon 2, Rule 2.9(C) (2024 Kan. S. Ct. R. at 491). Brave claims Judge Woolley erred by taking judicial notice of the court files in the other cases. K.S.A. 60-409 et seq. codifies how facts may be judicially noticed. Under K.S.A. 60-409(b):

> "(b) Judicial notice may be taken without request by a party, of (1) private acts and resolutions of the Congress of the United States and of the legislature of this state, and duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state, and (2) the laws of foreign countries and (3) such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute, and (4) specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy."

K.S.A. 60-410(a) states: "The judge shall afford each party reasonable opportunity to present to him or her information relevant to the propriety of taking judicial notice of a matter or to the tenor of the matter to be noticed." This court reviews the district court's exercise of judicial notice for an abuse of discretion. See *Van Welden*

13

*v. Ramsay's Inc.*, 199 Kan. 417, 422, 430 P.2d 298 (1967). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing the abuse of discretion. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

Brave asserts that the district court engaged in an independent investigation by relying on contested facts in other cases and could not properly take judicial notice under K.S.A. 60-409. Judge Woolley was candid in the order imposing sanctions that he considered various other cases. He found that the cases supported Brad's sanctions claim, that Brad referenced each of these cases in his motion and arguments to the court, and that neither party objected to the district court relying on the cases and their court files.

We begin our analysis by pointing out the obvious fact that this case involves a motion for sanctions, including sanctions under K.S.A. 2023 Supp. 60-211. In *Wood v. Groh*, 269 Kan. 420, 431, 7 P.3d 1163 (2000), the Kansas Supreme Court stated:

> "Courts should take the following factors into consideration when determining whether to sanction a party and what kind of sanction to impose:
> "(1)  whether the improper conduct was willful or negligent;
> "(2)  whether it was part of a pattern of activity or an isolated event;
> "(3)  whether it infected the entire pleading or only one particular count or defense;
> "(4)  whether the person has engaged in similar conduct in other litigation;
> "(5)  whether it was intended to injure;
> "(6)  what effect it had on the litigation process in time or expense;
> "(7)  whether the responsible person is trained in the law;
> "(8)  what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and
> "(9)  what amount is needed to deter similar activity by other litigants."

14

Brad's motion for sanctions included a claim under K.S.A. 2018 Supp. 60-211, alleging that Brave had filed a lawsuit against him purportedly on Yudi's behalf for vindictive reasons and motivated by malice. The motion described the long history of litigation between the parties. One of the *Wood* factors is whether the legal filing for which sanctions are being requested "was part of a pattern of activity or an isolated event." 269 Kan. at 431. Another factor is "whether the person has engaged in similar conduct in other litigation." 269 Kan. at 431. Given the standard, it makes sense that the district court examined other cases between the parties.

The district court made it clear that it reviewed the other court files only to assess Brave's motives and to consider whether sanctions were warranted in this case, not in the other cases. Most of the court files the district court judicially noticed were closely related to this case by way of their parties, arguments, and subject matter. At the hearing on the sanctions motion, Brad's counsel discussed the 10-year, multi-case litigation history of Brave suing Brad. Brad presented 21 exhibits, all of which were admitted into evidence without objection from Brave. Among the admitted exhibits was a written summary of the litigation history surrounding this case and others.

Brave argues that the district court did not give proper notice under K.S.A. 60-412(d) that it intended to take judicial notice of the court files in the other cases. We find that K.S.A. 60-412(d) is inapplicable here because that statute addresses judicial notice in proceedings subsequent to trial. But a similar provision is found in K.S.A. 60-410(a) which requires the court to afford each party a reasonable opportunity to address any matter to be judicially noticed by the court. We find that provision was satisfied here, with some exceptions we will address later. Brad's sanctions motion discussed other cases between the parties, and the cases were discussed by Brad's counsel at the hearing on the motion. There was no surprise here. Brave was afforded the opportunity to present any information he believed was relevant to the propriety of the court taking judicial notice of the court files in the other cases, in compliance with the statute.

Brave also appears to argue that the district court violated the statute because it made no formal announcement of its intent to judicially notice the other court files. But the other cases were discussed at length in the motion for sanctions and the hearing on the matter. The extensive discussion of the other cases demonstrates that the parties expected the court to review the files as part of its analysis of the request for sanctions.

Kansas courts have long held that a court may judicially notice its own case files under K.S.A. 60-409(b)(4) as a specific and easily verifiable fact from a source with indisputable accuracy. *Baker v. Hayden*, 313 Kan. 667, 681, 490 P.3d 1164 (2021) (citing K.S.A. 60-409[b][4] along with the proposition that courts may judicially notice their own files); *State v. Lowe*, 238 Kan. 755, 759, 715 P.2d 404 (1986) (the landmark case in Kansas for this proposition); *State v. Rankin*, 60 Kan. App. 2d 60, 63-64, 489 P.3d 471 (2021) ("Under [K.S.A. 60-409(b)(4)], a district court has the power to take judicial notice of its own records."). This power to notice a court's own records extends to other cases beyond this case. See *State v. Finch*, 291 Kan. 665, 674, 244 P.3d 673 (2011) (citing with approval out of state cases finding that a district court may judicially notice cases with the same or practically the same parties involving similar subject matters).

So as a starting point, the district court was allowed under K.S.A. 60-409(b)(4) to judicially notice any court file from seven of the nine cases that it considered because those cases were adjudicated in Sedgwick County and all of them are closely related to this case by way of their parties, arguments, and subject matter—the only exceptions being the Cowley County case and the federal case the district court referenced in its order. As for those cases, we note that Judge Woolley did not claim to have judicially noticed and reviewed the court files as he did with the cases from Sedgwick County. The Cowley County case involved the underlying litigation between the parties, and venue was later transferred to Sedgwick County. In referencing that case, most of the facts were set out in Judge Woolley's summary judgment order which this court affirmed in *Hernandez I*. As for the federal case, Judge Woolley said: "With regard to the Lanham

16

Act case the court looked at least one of Judge O'Hara's orders that's in West Law. The orders that are in West Law with Judge Melgren. The court looked at the 10th Circuit decision."

Brave argues that although K.S.A. 60-409(b) allows the district court to judicially notice well-established facts, the "vast majority" of the facts the district court reviewed from the other cases were nothing more than "hotly contested allegations" that could not be relied upon. In *Jones v. Bordman*, 243 Kan. 444, 459, 759 P.2d 953 (1988), the Kansas Supreme Court held that nothing in K.S.A. 60-409 "authorizes a court to take judicial notice of the contested factual findings reached by another court." *Jones* involved a dispute over whether an expert witness was qualified to testify. To resolve that dispute, the district court took judicial notice and adopted findings about the expert's qualifications made by the district court in a separate case, even though those findings were disputed in the other case. The *Jones* court found that action to be beyond the scope of K.S.A. 60-409. 243 Kan. at 459. But that is not the situation presented here.

We disagree with Brave's characterization of the district court's review of the other cases in its sanctions order. While the district court's discussion of the other cases was detailed, it essentially amounted to an in-depth summary of the pleadings and orders filed in the other cases that could be gleaned from the court files and published decisions arising from those cases. The purpose of the discussion was not to resolve any disputed material facts that arose between the parties in the other cases, but only to summarize the lengthy history of litigation in cases filed by Brave against Brad, so the district court could address and properly assess Brad's claim for sanctions against Brave in this case. Moreover, Brave's blanket claim that the "vast majority" of summarized facts were "hotly contested" is conclusory and fails to show how the district court abused its discretion. Thus, we reject Brave's assertion that the court judicially noticed contested facts in the manner that it reviewed and summarized the other litigation between the parties.

17

As we said earlier, there are some exceptions to our finding that the district court satisfied K.S.A. 60-410(a) in taking judicial notice of the other cases between the parties. Brad's sanctions motion was argued on October 19, 2018. The sanctions order was not filed until March 11, 2022. Of the nine cases the district court discussed in its order, the proceedings in the last two cases—the federal Lanham Act case and the *B.E. v. Brad et al.* case filed in Sedgwick County—occurred almost entirely after the October 2018 hearing. Also, some proceedings in the other seven cases occurred after the sanctions hearing. Brave was not afforded the opportunity to present information relevant to the propriety of the district court taking judicial notice of any proceedings in the other cases that occurred after the sanctions motion was argued on October 19, 2018, as required by K.S.A. 60-410(a). To this extent, the district court erred in taking judicial notice.

Brad argues that even if there were error in taking judicial notice, it was harmless. Judicial notice is an evidentiary principle, subject to harmless error analysis. See *State v. Stine*, No. 124,568, 2022 WL 3132161, at *14 (Kan. App. 2022) (unpublished opinion) ("[W]e apply the harmless error rule to the trial court's errant decision to take judicial notice."). K.S.A. 2023 Supp. 60-261 provides that no error in admitting or excluding evidence shall be grounds for disturbing a judgment or order unless justice requires otherwise and mandates that "the court must disregard all errors and defects that do not affect any party's substantial rights." And as we said before, the party alleging judicial misconduct has the burden of establishing not only that the misconduct occurred but that it prejudiced the party's substantial rights. *Miller*, 308 Kan. at 1154.

We find the district court's error in taking judicial notice of proceedings in other cases that occurred after the sanctions hearing did not affect Brave's substantial rights and was harmless. Most of the lengthy history of the other cases the district court judicially noticed occurred before the sanctions motion was argued. This history provided the district court with a flavor of the other litigation between the parties. For that matter, we find there was sufficient evidence for the court to grant sanctions against Brave even if

18

the litigation history between the parties were disregarded altogether. Brave filed this lawsuit against Brad purportedly on Yudi's behalf even though Brad never worked on Yudi's case and Yudi had never met Brad before this current lawsuit was filed. Yudi did not know she was a plaintiff and thought she was the one being sued. Yudi testified she had not been harmed and wanted nothing from Brad. The district court's examination of Brave's conduct in the other litigation against Brad was only the cherry on top, not the smoking gun, supporting the court's decision to grant sanctions against Brave.

In sum, Rule 2.9(C) of the Kansas Code of Judicial Conduct provides that a judge shall not "investigate facts in a matter independently" and shall consider only "evidence presented and any facts that may properly be judicially noticed." (2024 S. Ct. R. at 491). It cannot be said that Judge Woolley investigated facts independently when he simply reviewed the court files in other cases between the parties that had been referenced in the sanctions motion and argued to the court without objection. Likewise, the district court substantially complied with the statutes on taking judicial notice of the records in the other cases. Any error committed by the district court in taking judicial notice did not affect Brave's substantial rights and was harmless under K.S.A. 2023 Supp. 60-261. Thus, we reject Brave's claim that the district court engaged in judicial misconduct by independently investigating facts not introduced into evidence and relying on them in its ruling.

OTHER CHALLENGES TO JUDGE WOOLLEY'S SANCTIONS ORDER

Brave asserts that Judge Woolley applied the wrong legal standard in imposing sanctions under its inherent powers because he did not find that Brave acted in bad faith. Brad counters that the sanctions order concludes that Brave's malicious motives drove the litigation in this case, which is a finding of bad faith. An appellate court reviews the district court's decision to grant or deny sanctions under the inherent powers of the court for an abuse of discretion. *Richards v. Bryan*, 19 Kan. App. 2d 950, Syl. ¶ 14, 879 P.2d

638 (1994). As we stated earlier, a district court abuses its discretion when it commits an error of fact or law. *In re Spradling*, 315 Kan. at 590.

A court has the inherent power to issue sanctions for bad-faith conduct. When counsel is sanctioned under this power, an express finding of bad faith is required or the appellate court must set aside the award. *Larson Operating Co. v. Petroleum, Inc.*, 32 Kan. App. 2d 460, 472, 84 P.3d 626 (2004). Although Judge Woolley did not explicitly find bad faith under that exact term, he made ample findings of bad faith in other terms. Bad faith is "[d]ishonesty of belief, purpose, or motive." Black's Law Dictionary 171 (11th ed. 2019). Judge Woolley found that "Brave's admitted his malice against Brad has governed the conduct of this case." He also found:

> "Regarding Brave's actions in this case, the court concludes Brad has proven Brave's improper motives in litigating this case, Brave's engaged in deception and or lack of candor to the court; and Brave's misuse of his attorney-client relationship, wherein Brave has represented a client who apparently didn't realize that she (Yudi) has been merely a vehicle for Brave to protect Brave's fees and to pursue litigation against Brad by any means necessary."

So while Judge Woolley's sanctions order did not use the term, "bad faith," it expressly found that Brave, throughout this case, acted dishonestly, maliciously, and with an improper purpose. That satisfies the plain meaning of bad faith. The district court did not misapply the law to impose sanctions under its own inherent power.

Brave also asserts that Judge Woolley erred in imposing sanctions under K.S.A. 2023 Supp. 60-211(c) because Brad did not timely move for sanctions within 14 days after the entry of judgment. Brave points to the district court's memorandum and order granting summary judgment filed on August 22, 2018, and Brad did not move for sanctions until September 27, 2018. As a result, Brave argues that Brad's motion was untimely. Brad argues that Brave did not preserve this issue for appeal because he did not

raise the timeliness issue in district court. On the merits, Brad asserts the sanctions motion was timely filed within 14 days of the journal entry of judgment.

Brad is correct that Brave did not argue below that the sanctions motion was not timely filed. Brave does not address the preservation issue and does not respond to Brad's argument. As a result, Brave has failed to show or even claim that this issue was preserved for appeal. Moreover, he fails to claim that any preservation exceptions apply. Brave has not preserved this issue for appeal. *In re W.L.*, 312 Kan. 367, 383, 475 P.3d 338 (2020) (acknowledging that absent an explanation why an issue was not raised below, the issue may be deemed waived and abandoned).

In any event, Brave's claim lacks merit. The August 22, 2018, memorandum decision granting summary judgment concluded by stating: "Counsel for Brad Pistotnik shall prepare any necessary orders." A journal entry of judgment incorporating the summary judgment ruling and dismissing the case with prejudice was filed on September 13, 2018. K.S.A. 2023 Supp. 60-258 provides: "No judgement is effective unless and until a journal entry or judgment form is signed by the judge and filed with the clerk." K.S.A. 2023 Supp. 60-211(c) allows the filing of a motion for sanctions up to 14 days after the entry of judgment. The judgment was not entered until September 13, 2018, and Brad's motion was timely filed 14 days later on September 27, 2018.

Brave also asserts that Judge Woolley erred in imposing sanctions under K.S.A. 2023 Supp. 60-211 because the order did not identify a pleading, motion, or other paper that was filed in violation of the statute. K.S.A. 2023 Supp. 60-211 applies to written motions, pleadings, and other papers, and representations to the court. Brave argues that Judge Woolley only found misconduct in how Brave conducted discovery and that K.S.A. 2023 Supp. 60-211 does not apply. Brad argues that Brave's claim "demonstrates either a shocking disregard for, or complete misapprehension of" the sanctions order because it is full of findings of other misconduct beyond discovery.

21

Brad correctly states that Judge Woolley repeatedly referenced the fact that Brave filed this lawsuit on behalf of an unwitting client who had never met Brad, wanted nothing from Brad, could not identify anything that Brad had done to harm her, who at her deposition did not even know that she had sued Brad, and instead had been informed that Brad had sued her. Inherent in these findings is that Brave's filing of the petition itself, and everything filed thereafter, violated K.S.A. 2016 Supp. 60-211 because the entire action had been instituted for an improper purpose.

Judge Woolley did not err in imposing sanctions under K.S.A. 2021 Supp. 60-211 simply because the order did not identify specific pleadings that were filed in violation of the statute. But even if K.S.A. 2023 Supp. 60-211 does not allow a "blanket award" of sanctions, Judge Woolley could authorize such an order under the inherent power of the court. As the United States Supreme Court found in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110, 137 S. Ct. 1178, 197 L. Ed. 2d 585 (2017), a court may issue a "blanket award" of sanctions under its inherent authority to sanction "[i]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior." A fair reading of Judge Woolley's 64-page sanctions order supports that he reached this conclusion as to Brave's conduct in his litigation against Brad.

BRAVE'S CLAIM FOR SANCTIONS AGAINST BRAD
AND HIS COUNSEL FOR COMMITTING DISCOVERY FRAUD

Brave claims that the real reason this case was so contentious was because of Brad and his frivolous objections to Brave's discovery requests. He sought sanctions under K.S.A. 2022 Supp. 60-211(c) and K.S.A. 2022 Supp. 60-237(a)(5) below in a motion filed on March 10, 2023. Brave argues that Brad violated discovery orders about a $9,500,000 settlement, and that the district court was required to sanction him but failed to do so. Brad responds that the district court did not abuse its discretion in denying Brave's motion to sanction Brad and his counsel, or to hold them in contempt.

22

We decline to rehash the entire history of the discovery dispute. To summarize, the settlement in question was 20 years old and from Texas. The face of the documents stated that the settlement was confidential. Thus, Brad did not disclose the settlement until the district court ordered that confidential documents were to be produced for an in-camera review. At that time, Brad produced the documents and the district court also found that the settlement was confidential. When Judge Woolley entered the case, he reviewed the settlement and again found that it was confidential. It was not until later that the parties learned that the settlement documents were publicly available as part of a paper record in Texas. Brave does not contest these facts but argues that Brad misled the court and willfully withheld the settlement agreement when it was public information.

Senior Judge Wilson denied Brave's motion after hearing arguments of counsel at the Zoom hearing on March 24, 3023. A district court's decision whether to grant discovery sanctions is reviewed for an abuse of discretion. *Canaan v. Bartee*, 272 Kan. 720, Syl. ¶ 1, 35 P.3d 841 (2001). The party asserting the district court abused its discretion bears the burden of showing the abuse of discretion. *Bicknell*, 315 Kan. at 466.

Brave argues that under K.S.A. 2023 Supp. 60-237(a)(5), a court must impose sanctions when a motion to compel discovery has been granted. That statute provides:

> "(5) If the motion [to compel discovery] is granted, the court must, . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) The movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response or objection was substantially justified; or

23

(iii) other circumstances make an award of expenses unjust." K.S.A. 2023 Supp. 60-237(a)(5).

Brave focuses on the language that the court "must" order fees against the violating party but ignores that the "must" language does not apply if the opposing party's nondisclosure was substantially justified or other circumstances make an award unjust. The circumstances support a finding that Brad's failure to comply with a discovery order, if any failure occurred at all, was substantially justified by a reasonable mistake about the settlement documents. Two different district judges had agreed that the settlement documents were confidential. Brave has not shown that the district court abused its discretion in denying his motion for sanctions against Brad and his counsel.

SENIOR JUDGE WILSON'S DECISION TO ABANDON THE SCHEDULED BENCH TRIAL

Finally, Brave claims his due process rights were violated when the district court abandoned the scheduled bench trial and, without giving proper notice, summarily awarded $275,000 as the appropriate amount of sanctions against Brave at the Zoom hearing on March 24, 2023. Brad does not directly respond to this claim. Whether a party's due process rights have been violated is a question of law subject to de novo review. *In re Sykes*, 303 Kan. 820, 823, 367 P.3d 1244 (2016).

Judge Woolley's March 11, 2022, order granting Brad's motion for sanctions ended by offering the parties an evidentiary hearing for the court to decide the amount of monetary sanctions that should be assessed against Brave. Both parties requested an evidentiary hearing. The district court approved a scheduling order with a discovery deadline of March 31, 2023, a pretrial conference on April 20, 2023, and a bench trial on May 11, 2023. The case was later reassigned to Senior Judge Wilson.

At a hearing on January 12, 2023, Brave announced his intention to move to set aside Judge Woolley's sanctions order, and Senior Judge Wilson and the parties agreed that motion would be scheduled for hearing on March 24, 2023. Brave later filed his written motion to set aside the sanctions order, and he also moved for an order to find Brad and his counsel in contempt for committing alleged discovery fraud, to be heard on March 24, 2023. Brave also moved to modify the original scheduling order to extend the discovery deadline beyond March 31, 2023. He also moved to schedule a supervised deposition of Brad's counsel, Hazlewood. The record does not reflect whether Brave's motions to extend discovery and to depose Hazlewood were ever resolved.

The district court held a Zoom hearing on March 24, 2023, with Senior Judge Wilson presiding. The district court first heard arguments on Brave's motion to set aside the sanctions order, and the court denied the motion. The district court next heard arguments on Brave's motion to find Brad and his counsel in contempt for committing alleged discovery fraud, and the court denied the motion. Then the district court asked counsel for arguments on Brad's request for assessment of fees. Brave pointed out the scheduling order and asked that the parties "be given time to do what Judge Woolley had allowed and conduct discovery." The district court seemed content that the invoices and declarations about attorney fees had been filed since August 2022 and that no more discovery was needed. Brave requested that Millsap be required to testify to support his declaration, but the court admitted the declaration without any testimony. Hazlewood asked that his own declaration be admitted into evidence, and the court granted the request. No other evidence was admitted on the fee issue. After hearing arguments of counsel, the district court granted Brad's request for fees in the amount of $275,000.

There is an obvious problem here. The district court ruled on the amount of sanctions before the discovery deadline expired and without conducting the scheduled pretrial conference and bench trial that both parties had requested. Brave's motions to modify the scheduling order and to take Hazlewood's supervised deposition were pending

25

when the district court held the Zoom hearing on March 24, 2023. It cannot be said that Brave waived any objection to the district court's procedure. Brave pointed out the prior scheduling order at the Zoom hearing and asked that the parties be allowed to complete discovery. He also asked for the testimony of one witness, Millsap, at the hearing, but the district court admitted Millsap's declaration without any testimony.

The only documentation in the record offering any explanation for the district court's decision to abandon the scheduled bench trial is a March 20, 2023, email from Brad's counsel to Senior Judge Wilson, copied to Brave, asking for clarification about what matters would be addressed at the March 24 hearing and whether it would include an evidentiary hearing on the fee application. On March 21, 2023, Senior Judge Wilson responded:  "The parties should be prepared to take up all issues." We find that this email correspondence from the district court was insufficient notice to Brave that the court would hold an evidentiary hearing on the fee application just three days later at the Zoom hearing, especially since neither party had asked the court to abandon the scheduled pretrial conference and bench trial. Instead, it appears from the email exchange that the court was confused about what matters were scheduled to be addressed at the hearing.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). In *Jennings v. Shauck*, 318 Kan. 711, 718, 547 P.3d 524 (2024), the Kansas Supreme Court recently held that the district court abused its discretion and violated due process by expanding the scope of a preliminary injunction hearing and conducting a trial on the merits without giving adequate notice to the parties of the consolidated hearing. Likewise, here, the district court violated Brave's due process rights by abandoning the scheduled bench trial and, without giving proper notice, summarily awarding $275,000 in sanctions against Brave at the Zoom hearing on March 24, 2023. We vacate the amount of sanctions awarded by the district court and any findings associated with the award, and remand for further proceedings. To be clear, the further proceedings are only for the

26

district court to decide the proper amount of sanctions it should assess against Brave, not to relitigate whether sanctions should be imposed against him. To ensure procedural fairness to both parties, we direct that the case be reassigned to a different judge who has not already heard arguments and expressed an opinion about the merits of the issue.

Before closing, we recognize that Brave has also claimed in this appeal that the district court violated his due process rights by imposing punitive sanctions without affording him the protections of a criminal defendant. Brave correctly argues that the United States Supreme Court has found that a civil monetary sanction "must be compensatory rather than punitive in nature." *Haeger*, 581 U.S. at 108. "In other words, the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." 581 U.S. at 108. If a sanction does more than compensate, then the court must provide procedural guarantees applicable in criminal cases. 581 U.S. at 108.

We have not addressed this claim in this opinion because the record reflects that Brad's request for assessment of fees filed on August 16, 2022, asks for sanctions that are only compensatory. In the fee request, Brad listed various invoices showing that he had incurred nearly $400,000 in attorney fees when the request was filed. Brad sought sanctions in the amount of $275,000 in the hope of avoiding unnecessary arguments over various time entries. As long as the amount of sanctions awarded by the district court remains compensatory and is limited to reimbursement of attorney fees and expenses incurred by Brad—which is all he is requesting—there is no merit to Brave's claim that he must be afforded the protections of a criminal defendant. Although Senior Judge Wilson found that his award of monetary sanctions was appropriate, in part, "to penalize Stephen Brave" and to deter others from engaging in similar conduct, we have vacated this award of sanctions and any findings associated with the award.

Affirmed in part, vacated in part, and remanded with directions.